1  Kane Moon (SBN 249834)
2  Allen Feghali (SBN 301080)
   Charlotte Mikat-Stevens (SBN 327047)
   **MOON LAW GROUP, PC**
3  1055 W. Seventh St., Suite 1880
   Los Angeles, California 90017
4  Telephone: (213) 232-3128
   Facsimile:  (213) 232-3125
5
6  Attorneys for Plaintiff MARIA BUSTOS RAMIREZ

   [*Additional counsel listed on subsequent page*]
7

8

9                  **UNITED STATES DISTRICT COURT**

10                 **EASTERN DISTRICT OF CALIFORNIA**

11

12 | MARIA BUSTOS RAMIREZ, individually, and | Lead Case No.: 1:22-CV-00542-SAB |
   | on behalf of all others similarly situated, | Consolidated with 1:22-CV-01042-SAB |

13                Plaintiff,                    [*Assigned to Magistrate Stanley A. Boone*]

14 vs.                                          CLASS AND REPRESENTATIVE ACTION

15 MERRILL GARDENS, LLC a limited              **PLAINTIFFS' NOTICE OF MOTION FOR**
16 liability company; and DOES 1 through 10,   **FINAL APPROVAL OF CLASS AND**
   inclusive,                                  **REPRESENTATIVE ACTION SETTLEMENT,**
                                               **INCLUDING MOTION FOR ATTORNEYS'**
17                Defendant                     **FEES, COSTS, AND SERVICE PAYMENTS;**
                                               **MEMORANDUM OF POINTS AND**
18                                              **AUTHORITIES**

19                                             [*Filed with Plaintiffs' Notice of Motion and*
20                                             *Memorandum of Points and Authorities, and the*
                                               *Declarations of Kane Moon, Mehrdad Bokhour,*
                                               *Jonathan Melmed, Plaintiff Ramirez, Plaintiff*
21                                             *Holguin, and Lesly Rubalcava, and [Proposed] Final*
                                               *Approval Order and Judgment*]
22
                                               FINAL APPROVAL HEARING:
23                                             Date:      May 29, 2024
                                               Time:      10:00 a.m.
24                                             Dept.:     9
25
                                               Complaint filed:       March 8, 2022
26                                             Action Removed:        April 18, 2022
                                               Action Transferred:    May 5, 2022
27                                             Action Consolidated:   November 7, 2023

28

1    Jonathan Melmed (SBN 290218)
     Meghan Higday (SBN 334626)
2    **MELMED LAW GROUP P.C.**
     1801 Century Park East, Suite 850
3    Los Angeles, California 90067
     Telephone: (310) 824-3828
4    Facsimile: (310) 862-6851

5    Mehrdad Bokhour, (SBN 285256)
     **BOKHOUR LAW GROUP, P.C.**
6    1901 Avenue of the Stars, Suite 450
     Los Angeles, California 90067
7    Telephone: (310) 975-1493

8    Attorneys for Plaintiff RAMONA HOLGUIN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 29, 2024, at 10:00 a.m. in Courtroom 9 of the United States District Court for the Eastern District of California, the Honorable Stanley A. Boone presiding, Plaintiffs Maria Bustos Ramirez and Ramona Holguin ("Plaintiffs"), on behalf of themselves, the California Labor Workforce Development Agency (the "LWDA"), and all others similarly situated, will, and hereby do, move the Court for final approval of the Joint Stipulation of Amended Class and Representative Action Settlement Agreement (the "Settlement," attached as Exhibit 1 to the accompanying Declaration of Kane Moon).

Specifically, Plaintiffs move for a Final Approval Order and Judgment:

(1)    Certifying a Class, for settlement purposes only;

(2)    Approving the Settlement as fair, reasonable, and adequate as to Class Members under Rule 23(e) of the Federal Rules of Civil Procedure, including the gross amount of the settlement;

(3)    Finding Class Members were given, in a reasonable manner under the circumstances, due and adequate notice of the proposed Settlement and advised of their right to participate in, object to, or exclude themselves from the Settlement;

(4)    Directing consummation of the terms and provisions of the Settlement in accordance with a Final Approval Order and Judgment;

(5)    Finally appointing Plaintiffs as the Class Representatives, for settlement purposes only, and approving an enhancement award in the amount of $7,500.00 to both of them, in recognition for their service and general release of claims;

(6)    Finally appointing Plaintiffs' Counsel Moon Law Group, PC, Melmed Law Group P.C., and Bokhour Law Group, P.C. as Class Counsel, for settlement purposes only, and approving an award of $275,000.00 for attorneys' fees and $19,610.36 for reimbursement of litigation costs actually incurred;

(7)    Confirming the appointment of ILYM Group, Inc. as the Settlement Administrator, finding the Administrator fulfilled its initial notice and reporting duties under the Settlement, and approving an award of $30,000.00 for administration services;

(8)    Approving payment of $63,750.00 to the LWDA and $21,250.00 to the PAGA Employees in settlement and release of claims for civil penalties under PAGA, and barring further claims for the Released PAGA Claims notwithstanding the submission of any Request for Exclusion from the Settlement;

(9)    Finally approving Legal Aid at Work as the *cy pres* beneficiary of any uncashed checks;

(10)    Directing the clerk of the Court to enter the Final Approval Order and Judgment as a final Judgment;

(11)    Directing the Administrator to provide notice of Judgment to Class Members by posting an electronic copy online for no less than ninety (90) calendar days following entry thereof; and

(12)    Without affecting the finality of the Judgment, reserving continued jurisdiction over the Parties solely for purposes of enforcing the Settlement and/or Judgment, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as are permitted by law.

Plaintiffs' motion is based on this Notice, the following Memorandum of Points and Authorities, the declarations filed herewith and exhibits attached thereto, the records and files in this action, and any other further evidence or argument that the Court may properly receive at or before the hearing. Plaintiffs also submit a [Proposed] Final Approval Order and Judgment with their moving papers.

As this Motion, and the relief sought, is consistent with the provisions of the Settlement, it is not opposed by Defendant Merrill Gardens, LLC.

Respectfully submitted,

Dated: May 1, 2024                **MOON LAW GROUP, PC**

By: /s/ *Allen Feghali*
      Kane Moon
      Allen Feghali
      Charlotte Mikat-Stevens

*Attorneys for Plaintiff Maria Bustos Ramirez*

Dated: May 1, 2024                **MELMED LAW GROUP P.C.**

By: /s/ *Meghan Higday*
      Jonathan Melmed
      Meghan Higday

Dated: May 1, 2024                **BOKHOUR LAW GROUP, P.C.**

By: /s/ *Mehrdad Bokhour*
      Mehrdad Bokhour

*Attorneys for Plaintiff Ramona Holguin*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

I.   INTRODUCTION ..................................................................................................... 1

II.  BACKGROUND ...................................................................................................... 2

     A.   Plaintiffs' Claims ........................................................................................... 2

     B.   Procedural History ......................................................................................... 3

     C.   Discovery, Investigation, and Settlement Negotiations ................................. 3

III. SUMMARY OF SETTLEMENT TERMS ................................................................ 4

IV.  THE SETTLEMENT MERITS FINAL APPROVAL ............................................... 7

     A.   Plaintiffs' Claims Merit Class Action Treatment for Settlement Purposes ............... 8

          1.   Numerosity ........................................................................................... 8

          2.   Commonality and Predominance of Common Issues ........................... 9

          3.   Typicality ............................................................................................. 10

          4.   Adequate Representation ..................................................................... 11

          5.   Superiority ........................................................................................... 11

     B.   The Class Notice Process Was Successfully Completed Following Preliminary
          Approval, and the Response Is Overwhelmingly Positive .......................... 13

     C.   The Settlement Falls Squarely Within the Range of Reasonableness and Should Be
          Finally Approved ......................................................................................... 14

     D.   The Amounts Requested for Attorneys' Fees, Litigation Costs, Service Payments,
          and Administration Costs Are Reasonable And Should Receive Final Approval ...... 20

          1.   Plaintiffs' Counsel Seek Only Actual Costs ...................................... 20

          2.   Plaintiffs' Counsel Request a Fees Award Based on the Common
               Fund/Percentage Method, Consistent with California Substantive Law .......... 20

          3.   The Requested Fee Award (33 1/3%) Is In Line with Typical Cases ............... 22

          4.   This Matter Involves a "Fee-Shifting" Provision of the California Labor Code 23

          5.   The Fee Request Satisfies California and Ninth Circuit Criteria ...................... 24

               a)   A reasonable result was achieved on behalf of the Class ......................... 24

PLTFS' NTC OF MTN FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT,
INCLUDING MTN FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENTS; MEMORANDUM

b) The experience, reputation, and ability of Class Counsel Support the Fee Award. ..................................................................... 25

c) The effort required by the litigation justifies the fee. ................................ 25

d) Plaintiffs' Counsel were precluded from other employment. ................... 25

e) The complexity of the legal and factual issues justifies the fee. ............... 26

f) Plaintiffs' Counsel assumed substantial contingency risk. ...................... 26

6. While a Lodestar Analysis Is Not Necessary, Courts May Perform a Cross-Check to Award Fees ......................................................................... 27

7. The Service Payments to Plaintiffs Are Reasonable ......................................... 28

8. The Costs of Administration Are Reasonable .................................................. 29

V.   CONCLUSION .............................................................................................................. 29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

FEDERAL DECISIONAL AUTHORITY

*Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ..................................................7

*Amchem Products Inc. v. Woodward*, 521 U.S. 591 (1997) .................................................12

*American Eagle Insurance Co. v. King Resources Co.*, 556 F.2d 471 (10th Cir. 1977) .........................24

*Angeles v. U.S. Airways, Inc.,* No. C 12–05860 CRB, 2013 WL 622032 (N.D. Cal. Feb. 19, 2013).......2

*Armstrong v. Board of School Directors of the City of Milwaukee*,

    616 F.2d 305 (7th Cir. 1980) ..............................................................................7, 8

*Baldwin & Flynn v. National Safety Associates*, 149 F.R.D. 598 (N.D. Cal. 1993)..................................8

*Bergman v. Thelen LLP*, No. 3:08-cv-05322-LB, 2016 U.S. Dist. LEXIS 170861

    (N.D. Cal. Dec. 9, 2016)................................................................................23

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ..............................................................8, 9, 10

*California Rural Legal Assistance, Inc. v. Legal Services Corp.*, 917 F.2d 1171 (9th Cir. 1990) ..........10

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)................................................................8

*Elkins v. Equitable Life Ins. of Iowa*, No. CivA96-296-Civ-T-17B, 1998 WL 133741

    (M.D. Fla. Jan. 23, 1998)................................................................................12

*Fischel v. Equitable Life Assurance Society of the U.S.*, 307 F.3d 997 (9th Cir. 2002) .........................27

*Gonzalez v. Southern Wine & Spirits of America, Inc.*, 555 Fed.Appx. 704 (9th Cir. 2014)..................21

*Hammon v. Barry*, 752 F.Supp 1087 (D.D.C. 1990) .................................................................15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................... 8, 9, 10, 11

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ..............................................10, 11

*Hughes v. Microsoft Corp.*, No. C98–1646C, C93–0178C, 2001 WL 34089697

    (W.D. Wash. Mar. 26, 2001)................................................................................13

*In re Activision Securities Litigation*, 723 F.Supp.1373 (N.D. Cal. 1989)...............................22

*In re Armored Car Anti-Trust Litigation*, 472 F.Supp 1357 (N.D. Ga. 1979) ........................15

*In re Computer Memories Securities Litigation*, 111 F.R.D. 675 (N.D. Cal. 1986)...............................9

*In re Immune Response Securities Litigation*, 497 F.Supp.2d 1166 (S.D. Cal. 2007) ...........................15

*In re Lifelock, Inc. Marketing & Sales Practices Litigation*, No. 08–1977–MHM,

Lead Case No.: 1:22-CV-00542-SAB                iii                *Ramirez v. Merrill Gardens, LLC*

PLTFS' NTC OF MTN FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT,
INCLUDING MTN FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENTS; MEMORANDUM

2010 WL 3715138 (D. Ariz. Aug. 31, 2010)..................................................................13

*In re Pacific Enterprises Securities Litigation*, 47 F.3d 373 (9th Cir. 1995) .....................................22, 23

*In re Public Service Co.*, No. 91-CV-536-HRM, 1992 U.S. Dist. LEXIS 16326

    (S.D. Cal. July 28, 1992) ................................................................................................26

*In re Rent-Way Securities Litigation*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ...........................................25

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ................................................................28

*Lewis v. Gross*, 663 F.Supp. 1164 (E.D.N.Y. 1986).......................................................................................9

*Linney v. Cellular Alaska Partnership*, Nos. C-96-3008 DLJ, C-97-0203 DLJ,

    C-97-0425 DLJ, C-97-0457 DLJ, 1997 WL 450064 (N.D. Cal. Jul. 18, 1997)..................................15

*Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,

    244 F.3d 1152 (9th Cir. 2001).........................................................................................10, 12

*Mangold v. California Public Utilities Commission*, 67 F.3d 1470 (9th Cir. 1995)................................21

*Mars Steel Corp. v. Continental Illinois National Bank & Trust Co.*, 834 F.2d 677 (7th Cir. 1987)......15

*Miller v. CEVA Logistics U.S.A., Inc.*, No. 2:13-cv-01321-TLN-CKD, 2015 WL 729638

    (E.D. Cal. Feb. 19, 2015)...............................................................................................17

*Morris v. Lifescan, Inc.*, 54 F.App'x 663 (9th Cir. 2003)..........................................................................23

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*,

    688 F.2d 615 (9th Cir. 1982)..........................................................................................14

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989)................................................23

*Pedroza v. PetSmart, Inc.*, No. ED CV 11–298 GHK (DTBx), 2012 WL 9506073

    (C.D. Cal. June 14, 2012) ................................................................................................3

*Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989).......................................................................................15

*Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978) ....................................................24

*Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D. Ill. 1986) .........................................................................8

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012)....................................................................................21

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)..................................................17, 28

*Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB, 2007 WL 3492841

    (E.D. Cal. Nov. 14, 2007)...............................................................................................23

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ............................ 23

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. Pa. 1978) ... 15

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................................................. 8, 14, 15, 20

*Strube v. American Equity Investment Life Insurance Co.*, 226 F.R.D. 688 (M.D. Fla. 2005) .............. 12

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996) .......................................................... 12

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ....................................................... 7

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ...................................... 22, 28

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977) ..................................................... 21

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .................................................. 23, 24, 25, 27

*Wang v. Chinese Daily News*, 231 F.R.D. 602 (C.D. Cal. 2005) .................................................... 8, 10

*Zamora v. Lyft, Inc.*, No. 3:16-cv-02558-VC, 2018 WL 4657308 (N.D. Cal. Sept. 26, 2018) .............. 23

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188 (9th Cir. 2001) ........................................ 10

**CALIFORNIA DECISIONAL AUTHORITY**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135 (2000).................... 24

*Bihun v. AT&T Information Systems*, 13 Cal. App. 4th 976 (1993) ................................................. 27

*Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012) ............................................ 19

*California Grape & Tree Fruit League v. Industrial Welfare Commission*,

268 Cal. App. 2d 692 (1969) ........................................................................................................ 25

*Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43 (2008) ................................................................. 22, 23

*City and County of San Francisco v. Sweet*, 12 Cal.4th 105 (1995).............................................. 21, 22

*Cundiff v. Verizon California*, 167 Cal. App. 4th 718 (2008) ....................................................... 27

*Duran v. U.S. Bank National Association*, 59 Cal. 4th 1 (2014)...................................................... 19

*Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629 (1995) ............................................. 25

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001)................................................................................ 26

*Kullar v. Foot Locker Retail, Inc.*, 168 Cal.App.4th 116 (2008) .................................................... 13

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19 (2000)................................................... 27

*Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429 (2000)........................................................................ 25

*Quinn v. State of California*, 15 Cal.3d 162 (1975)..................................................................... 21

Lead Case No.: 1:22-CV-00542-SAB                                    v                            *Ramirez v. Merrill Gardens, LLC*

PLTFS' NTC OF MTN FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT;
INCLUDING MTN FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENTS; MEMORANDUM

*Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319 (2004)......................................................25

*Serrano v. Ivy Baker Priest*, 20 Cal.3d 25 (1977) ..............................................21, 24, 25, 26, 27

*Wershba v. Apple Computer*, 91 Cal. App. 4th 224 (2001)..............................................26, 27

**STATUTES**

California Labor Code § 218.5 ....................................................................................................23

California Labor Code § 226 .......................................................................................................23

California Labor Code § 1194 .....................................................................................................23

California Labor Code § 2699(e)(1) ...........................................................................................19

California Labor Code § 2699(e)(2) ......................................................................................17, 18

California Labor Code § 2699(g)(1) ...........................................................................................23

California Labor Code § 2802(d) ................................................................................................23

**RULES**

Federal Rules of Civil Procedure, Rule 23 ...................................................................... *passim*

**TREATISES**

Manual for Complex Litigation, Second § 30.44 (1985).............................................................7

Manual for Complex Litigation, Fourth § 21.71 (2008)...............................................................

Newberg, Newberg on Class Actions (3rd ed. 1992) § 11.51....................................................15

Newberg, Newberg on Class Actions (3rd ed. 1992) § 14.03....................................................22

**OTHER AUTHORITIES**

Hilary Hehman, Findings of the Study of California Class Action Litigation, 2000-2006 (March 2009),

    https://www.courts.ca.gov/documents/class-action-lit-study.pdf ......................................18

PLTFS' NTC OF MTN FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT, INCLUDING MTN FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENTS; MEMORANDUM

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    <u>INTRODUCTION</u>

This is a wage and hour class action and representative action for alleged California Labor Code violations and claims for civil penalties pursuant to the California Private Attorneys General Act, Labor Code sections 2698, *et seq.* ("PAGA"). Plaintiffs Maria Bustos Ramirez ("Plaintiff Ramirez") and Ramona Holguin ("Plaintiff Holguin," and together with Plaintiff Ramirez, "Plaintiffs") seek approval of the Joint Stipulation of Amended Class and Representative Action Settlement (the "Settlement")[1] reached with Defendant Merrill Gardens, LLC ("Defendant," and together with Plaintiffs, the "Parties"). The Settlement will provide substantial monetary payments to 4,602 Settlement Class Members, consisting of all non-exempt employees of Defendant who worked for Defendant in California during March 8, 2018 through June 20, 2023 (the "Class Period"),[2] for various alleged violations of the California Labor Code.

As set forth more fully below, the proposed Settlement satisfies all criteria for approval under Federal law. The Settlement was reached after extensive investigation, discovery, and arm's-length negotiations. Thus, the Settlement is fair, reasonable, and adequate and is in the best interests of the Class, particularly considering the substantial risks involved in this litigation. Following the production of policy documents, time records, and pay data, and vigorous negotiation at mediation, the Parties reached a gross settlement of $825,000.00, which was granted preliminary approval. (Dkt. No. 54.) Following preliminary approval, the Class Notice process was completed successfully. The Class Notice—which stated all amounts for attorneys' fees, costs, and service payments being sought by the instant motion—was translated into Spanish and delivered via first-class mail to Class Members with minimal issues. To date, only four Class Members requested exclusion from the Settlement, and no objection to the Settlement has been received by any Class Member or the California Labor and Workforce Development Agency (the "LWDA").

---

[1] The Settlement is attached as Exhibit 1 to the accompanying Declaration of Kane Moon in Support of Motion for Final Approval of Class and Representative Action Settlement ("Moon Decl.").

[2] Pursuant to the Escalator Clause under the Settlement, following preliminary approval, the Settlement Administrator received the Class List from Defendant, and thereby determined the Escalator Clause had been triggered. (Moon Decl., ¶ 33; Declaration of Lesly Rubalcava of ILYM Group, Inc. in Support of Motion for Final Aproval of Class and Representative Action Settlement ["Rubalcava Decl."], ¶ 14, n.1.) Defendant elected to end the Class Period on the triggering date of the Escalator Clause, which the Settlement Administrator determined to be June 20, 2023. (Moon Decl., ¶ 33; Rubalcava Decl., ¶ 14, n.1.)

Accordingly, through this Motion, Plaintiffs respectfully request the Court grant final approval of the Settlement, certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23, and enter the [Proposed] Final Approval Order and Judgment submitted concurrently herewith.

## II.    BACKGROUND

### A.    Plaintiffs' Claims

Plaintiffs worked for Defendant during the Class Period and were classified as non-exempt during the entirety of their employment. (Declaration of Plaintiff Maria Bustos Ramirez in Support of Motion for Final Approval of Class and Representative Action Settlement ["Ramirez Decl."], ¶¶ 2, 8; Declaration of Plaintiff Ramona Holguin in Support of Motion for Final Approval of Class and Representative Action Settlement ["Holguin Decl."], ¶¶ 2, 8.) Plaintiffs contend both they and their coworkers were subjected to the same unlawful labor practices, including failure to pay wages for all hours worked. (Moon Decl., ¶ 3.) Plaintiffs' claim for unpaid wages is based on Defendant's alleged policy of not paying employees for all hours worked, including off-the-clock work. Moreover, Plaintiff brings claims for alleged failure to indemnify necessary business expenses, meal and rest period violations, and derivative claims against Defendant for waiting time penalties, wage statement violations, unfair business practices, and civil penalties under PAGA. (*Id.* at ¶ 4.)

Defendant ardently opposes the merits of this case and denies Plaintiffs' factual allegations. (*Id.* at ¶ 9.) Defendant maintains it paid for all hours worked and complied with all its meal and rest period obligations, and that Plaintiffs and the Class were provided with the opportunity to take all meal and rest periods to which they were entitled. (*Id.*) As for the unreimbursed business expenses, Defendant maintains it provided the Class with everything required for completion of job duties. (*Id.*) Defendant also argues it timely paid Class Members all wages owed throughout their employment and at separation. (*Id.*) Lastly, to the extent that Plaintiffs received wage statements that were allegedly inaccurate, Defendant asserts Plaintiffs suffered no actual damage or harm as a result. (*Id.*; *see, e.g.*, *Angeles v. U.S. Airways, Inc.*, No. C 12–05860 CRB, 2013 WL 622032, at *10 (N.D. Cal. Feb. 19, 2013) ["A plaintiff must adequately plead an injury arising from an employer's failure to provide full and accurate wage statements, and the omission of the required information alone is not sufficient."].) With respect to Plaintiffs' claim for waiting time penalties, Defendant alleges its good-faith belief that it paid all wages

precludes the imposition of waiting time penalties since Plaintiffs cannot prove Defendant's alleged failure to pay all final wages at the time of separation was "willful." (Moon Decl., ¶ 9; *see, e.g.*, *Pedroza v. PetSmart, Inc.*, No. ED CV 11–298 GHK (DTBx), 2012 WL 9506073, *5 (C.D. Cal. June 14, 2012).) For these reasons, Defendant claims it did not engage in any unfair business practices and denies liability under PAGA. (Moon Decl., ¶ 9.) Additionally, Defendant contends Plaintiffs could not prevail on a certification motion, in part, due to the existence of dispute resolution agreements executed by Class Members as well as the individualized nature of Class Members' work experiences. (*Id.*)

### B.    Procedural History

Because of Defendant's alleged violations, Plaintiff Ramirez filed a class action on March 8, 2022 (the "*Ramirez* Action"). (*Id.* at ¶ 5.) The Ramirez Action was subsequently removed to federal court. (*Id.*) On May 5, 2022, pursuant to stipulation in the Ramirez Action, the matter was transferred to the United States District Court for the Eastern District. (*Id.*) On February 19, 2022, Plaintiff Ramirez gave written notice to the LWDA, with certified mail service on Defendant, of the alleged Labor Code violations. (*Id.* at ¶ 6.) Plaintiff Ramirez's administrative exhaustion period under PAGA expired without the LWDA indicating its intent to investigate the alleged violations. (*Id.*) On June 15, 2022, Plaintiff Ramirez filed a first amended complaint to allege PAGA claims. (*Id.*) In compliance with California Labor Code section 2699, a copy of the amended complaint and case number was submitted to the LWDA. (*Id.*)

Plaintiff Holguin filed a class action on June 6, 2022, which was subsequently removed to federal court in the United States District Court for the Central District (the "*Holguin* Action"). (*Id.* at ¶ 7.) On August 15, 2022, pursuant to the stipulation, the *Holguin* Action was transferred to the United States District Court for the Eastern District. (*Id.*) On November 7, 2023, this Court consolidated the *Holguin* and *Ramirez* Actions and designated the *Ramirez* Action as the lead case. (*Id.* at ¶ 8.)

### C.    Discovery, Investigation, and Settlement Negotiations

The Parties agreed to mediate on November 22, 2022, and further agreed to a protocol for an exchange of documents and information before the mediation. (*Id.* at ¶ 10.) Prior to mediation, Plaintiffs obtained from Defendant, through discovery, voluminous documents and data that was necessary and useful in evaluating the claims and defenses asserted in this action. (*Id.*) Defendant produced written wage and hour policies, exemplar arbitration agreements signed by Class Members, as well as a sample

size of time and payroll records for roughly 20% of the Class. (*Id.*)

In preparation for mediation, Plaintiffs' Counsel reviewed and analyzed all the information that Defendant had provided. (*Id.* at ¶ 11.) Plaintiffs' Counsel retained a statistics expert to analyze the sample records produced and prepare a damage analysis prior to mediation. (*Id.*) The expert was able to prepare an analysis with a high degree of certainty based on the size of the sampling of time and wage records. (*Id.*) Plaintiffs' Counsel received detailed information from Plaintiffs regarding their work experiences and also interviewed other Class Members. (*Id.*) In conjunction with their extensive factual investigation, Plaintiffs' Counsel also investigated the applicable law regarding the claims and defenses asserted in the litigation. (*Id.*) Accordingly, Plaintiffs' Counsel were able to evaluate the probability of class certification, success on the merits, and Defendant's maximum and risk-adjusted monetary exposure for all claims. (*Id.*) Thus, Plaintiffs and their Counsel's familiarity with the facts of the case and the legal issues raised by the pleadings allowed them to act intelligently in negotiating the Settlement. (*Id.*)

On November 22, 2022, the Parties participated in a full day of private mediation with Steven Rottman, Esq., an experienced and neutral class and PAGA action mediator. (*Id.* at ¶ 12.) The negotiations were at arm's length and, although conducted in a professional manner, were adversarial. (*Id.*) The Parties went into the mediation willing to explore the potential for a settlement of the dispute, but each side was also prepared to litigate their position through trial and appeal if a settlement had not been reached. (*Id.*) After extensive negotiations and discussions regarding the strengths and weaknesses of the claims and Defendant's defenses, a settlement was reached by the Parties, the material terms of which are encompassed within the Settlement. (*Id.*)

Plaintiffs' Counsel have conducted a thorough investigation into the facts of this case. (*Id.* at ¶ 21.) Based on the foregoing document and information exchange and on their own independent investigation and evaluation, Plaintiffs' Counsel are of the opinion that the Settlement is fair, reasonable, and adequate. (*Id.*) Furthermore, considering all known facts and circumstances, the risk of significant delay, trial risk, appellate risk, and the defenses that Defendant may assert both to certification and on the merits, the Settlement is in the best interests of the Class. (*Id.*)

## III.    SUMMARY OF SETTLEMENT TERMS

The full terms of the proposed Settlement are set forth therein. (*See generally* Settlement.) The

material terms are as follows:

(a)    The Settlement Class: All non-exempt employees of Defendant who worked for Defendant in California during the Class Period, except those who send the Settlement Administrator a timely Request for Exclusion. (*Id.* at ¶ 3.) The "Class Period" is March 8, 2018 through the date upon which the Court grants preliminary approval, subject to an earlier end date pursuant to the Escalator Clause. (*Id.* at ¶¶ 4, 26(d).)

(b)    Non-Opposition to Class Certification: Defendant does not oppose certification of a Class for purposes of settlement only. (*Id.* at ¶ 19.)

(c)    PAGA Employees: All Class Members that worked during the PAGA Period. (*Id.* at ¶ 13.) The "PAGA Period" is February 19, 2021 through the date upon which the Court grants preliminary approval. (*Id.* at ¶ 12.)

(d)    Non-Reversionary Gross Settlement Amount: The non-reversionary Gross Settlement Amount is $825,000.00 and excludes Defendant's employer's taxes. This amount will be used to pay the Class Representative Service Payments to Plaintiffs, the PAGA Allocation, Settlement Administration Costs, and Class Counsel's Attorneys' Fee and Litigation Costs Awards. (*Id.* at ¶ 26(c), (e), (g).) The amount remaining will be distributed to Settlement Class Members through individual Settlement Class Payments. (*Id.* at ¶ 26(i).) Any uncashed checks remaining after the 180-day void period will be canceled and transmitted to Legal Aid at Work as the *cy pres* beneficiary. (*Id.* at ¶ 35.)

(e)    No Claim Form:  No claim form is required from Settlement Class Members and/or PAGA Employees. (*Id.* at ¶ 26(f).)

(f)    The PAGA Allocation: The Parties agreed that $85,000.00 from the Gross Settlement Amount will be allocated toward settlement of claims for penalties under PAGA, of which 75% ($63,750.00) will be paid to the LWDA and 25% ($21,250.00) will be paid to PAGA Employees through individual Settlement PAGA Payments on a pro-rata basis based on pay periods worked during the PAGA Period. (*Id.* at ¶¶ 11, 26(j).)

(g)    Tax Allocation: 33 1/3% of all individual Settlement Class Payments shall be considered wages and shall be subject to the withholding of all applicable local, state, and federal taxes, 33 1/3% shall be considered penalties, and 33 1/3% shall be considered interest. (*Id.* at ¶ 26(k).) The individual Settlement PAGA Payment shares will be entirely allocated to penalties. (*Id.* at ¶ 26(j).)

(h)    Class Release: The Settlement will release specified wage and hour claims for Settlement Class Members (those Class Members who do not timely opt out of the Settlement). (*Id.* at ¶ 37.)

(i)    PAGA Release: PAGA Employees and the LWDA will release the PAGA Claims that were identified in the Complaint and Plaintiff Ramirez's PAGA Notice, regardless of whether they opt out of the class portion of the Settlement. (*Id.* at ¶¶ 1, 16, 37.)

(j)    Notice to LWDA: Notice of the alleged claims and proposed Settlement was provided to the LWDA, and to date, the LWDA has not indicated any intent to investigate the allegations, intervene in this Action, or object to the proposed Settlement. (Moon Decl., ¶¶ 6, 14–15.)

(k)    Class Counsel Attorneys Fee and Litigation Costs Awards: Defendant will not oppose Class Counsel's application for fees not to exceed 33 1/3% of the GSA (**$275,000.00**),[3] and actual costs, in an amount not to exceed **$30,000**,[4] both to be paid out of the GSA. (Settlement, ¶ 26(m).)

(l)    Class Representative Service Payments: Subject to Court's approval, each Plaintiff will be paid a Service Payment of $7,500.00. (*Id.* at ¶ 26(n).) This award is for Plaintiffs' time, effort, and exposure to substantial risk in bringing and presenting the action, as well as consideration for their general release of claims, both known and unknown, and waiver of section 1542 rights. (*Id.*) In the event the amount finally approved is less, the difference will revert to Settlement Class Members. (*Id.*)

(m)    Settlement Administrator: The Court appointed ILYM Group, Inc. as the Settlement Administrator at preliminary approval. (Dkt. No. 54.) The Settlement Administrator's final costs, which include costs for services performed to-date as well as future remaining services following final approval, are $30,000.00. (Rubalcava, ¶ 17; Moon Decl., ¶ 20, Exh. 4.)

(n)    Notice: The notice of the proposed Settlement ("Class Notice"), in the form attached as Exhibit A to the Settlement, set forth in plain terms, a statement of the case, the terms of the Settlement

---

[3] Pursuant to a joint prosecution and fee-sharing agreement between the three Plaintiff firms, and as consented to in a signed writing by Plaintiffs, the firms will split the award for fees as follows: 80% to Moon Law Group, PC; 10% to Bokhour Law Group, P.C.; and 10% to Melmed Law Group P.C. (Moon Decl., ¶ 58, n.3.)

[4] To date, Plaintiffs' Counsel have incurred a total of **$19,610.36** in costs as follows: $17,931.53 by Moon Law Group, PC; and $1,678.83 by hour Law Group, P.C. (Moon Decl., ¶ 17, Exh. 3; Declaration of Mehrdad Bokhour in Support of Motion for Final Approval of Class and Representative Action Settlement ["Bokhour Decl."], ¶¶ 16–17, Exh. A.)

1    Agreement, each respective Settlement Class Member's total number of work hours and estimated individual

2    Settlement Class Payment, each respective PAGA Employee's PAGA pay periods and estimated individual

3    Settlement PAGA Payment (if any), instructions on how to submit Requests for Exclusion, objections, or

4    work hour disputes, and the final approval hearing information. (*Id.*, Exh. A; Rubalcava, ¶ 7, Exh. A.)

5         (o)    <u>No Admission of Liability</u>: Defendant denies any and all claims alleged, and the Settlement

6    will not constitute an admission of any kind by Defendant. (*Id.* at ¶¶ 20, 46.)

7    **IV.    <u>THE SETTLEMENT MERITS FINAL APPROVAL</u>**

8         The law favors settlement, particularly in class actions and other complex cases, where substantial

9    resources can be conserved by avoiding the time, cost, and the rigors of formal litigation. (*Van Bronkhorst v.*

10   *Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).) These concerns apply in a case such as this, where allegedly

11   wrongful practices potentially affected numerous employees, in relatively small amounts.

12        Any settlement of class litigation must be reviewed and approved by the court. This is done in two

13   steps: (1) an early (preliminary) review by the court; and (2) a final review after notice has been distributed to

14   the class for their comment or objections. The Manual for Complex Litigation, Second states at § 30.44

15   (1985):

16        A two-step process is followed when considering class settlements … if the proposed
          settlement appears to be the product of serious, informed, non-collusive negotiations, has
17        no obvious deficiencies, does not improperly grant preferential treatment to class
          representatives or segments of the class, and falls within the range of possible approval,
18        then the court should direct that notice be given to the class members of a formal fairness
          hearing, at which evidence may be presented in support of and in opposition to the
19        settlement.

20   (*Id.*) When parties reach a settlement agreement prior to class certification, "courts must peruse the proposed

21   compromise to ratify both the propriety of the certification and the fairness of the settlement." (*Acosta v. Trans*

22   *Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).)

23        "The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement

24   is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather is to

25   ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed

26   with a fairness hearing." (*Armstrong v. Bd. of School Dir. of the City of Milwaukee*, 616 F.2d 305, 314 (7th

27   Cir. 1980) [quoting Manual for Complex Litigation § 1.46, at 53–55 (1977)] [overruled on other grounds by

28   *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)].) "[T]he district court must assess whether a class exists," in

1   other words, whether the lawsuit qualifies as a class action under Federal Rule 23. (*Staton v. Boeing Co.*, 327

2   F.3d 938, 952 (9th Cir. 2003); *see, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)

3   [reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)] [overruled

4   on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 338 (2011)].)

5       At the second stage of the approval process, after class members have had an opportunity to object to

6   the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate"

7   under Rule 23(e). (*Armstrong*, 616 F.2d at 314; *see Staton*, 327 F.3d at 952; *see also* Fed. R. Civ. P.

8   23(e)(C)(1) [providing a court may finally approve a settlement of a class action if it finds after a hearing that

9   the settlement is "fair, reasonable, and adequate"] and Fed. R. Civ. P. 23(e)(C)(4) [providing any class

10  member may object to a proposed settlement].)

11      **A.**    <u>**Plaintiffs' Claims Merit Class Action Treatment for Settlement Purposes**</u>

12      In determining the propriety of class certification, a court may not delve into the underlying merits of

13  the claims. The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail

14  on the merits, but rather whether the requirements of Rule 23 are met." (*Eisen v. Carlisle & Jacquelin*, 417

15  U.S. 156, 178 (1974).)

16      The Ninth Circuit has established that, when ruling on the propriety of class certification, a district

17  court "is bound to take the substantive allegations of the complaint as true." (*Blackie v. Barrack*, 524 F.2d

18  891, 901, n.17 (9th Cir. 1975).) A court "may not require plaintiffs to make a preliminary proof of their claim;

19  it requires only sufficient information to form a reasonable judgment." (*Baldwin & Flynn v. Nat'l Safety*

20  *Assoc.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993).) Under these standards, this action meets the requirements for

21  certification under Rules 23(a) and 23(b)(3).

22      **1.**    **Numerosity**

23      Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder

24  of all members is impracticable." (Fed. R. Civ. P. 23(a)(1).) In determining whether joinder would be

25  impracticable, a court may consider not only the sheer number of class members (*Riordan v. Smith Barney*,

26  113 F.R.D. 60, 62 (N.D. Ill. 1986) [numbers alone may be dispositive]), but also "the nature of the action, the

27  size of the individual claims, [and] the inconvenience of trying individual suits." (*Wang v. Chinese Daily*

28  *News*, 231 F.R.D. 602, 606 (C.D. Cal. 2005) [reversed on appeal as to commonality and predominance

1  elements only].) "A class action may proceed upon estimates as to the size of the proposed class." (*Lewis v.*

2  *Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986); *see also In re Comput. Memories Sec. Litig.*, 111 F.R.D.

3  675, 679 (N.D. Cal. 1986) [class certified where plaintiffs did not establish exact size, but demonstrated that

4  class would "obviously be sufficiently numerous"].) In this action, the Class is composed of 4,602

5  participating Settlement Class Members. (Rubalcava Decl., ¶ 14.) Accordingly, the Class is sufficiently

6  numerous that the individual joinder of all members is impracticable.

7                   **2.      Commonality and Predominance of Common Issues**

8              Rule 23(a)(2) requires that there be "questions of law or fact common to the class." (Fed. R. Civ. P.

9  23(a)(2).) This commonality requirement is "construed permissively." (*Hanlon*, 150 F.3d at 1019.) A plaintiff

10 need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues

11 with divergent factual predicates is sufficient." (*Id.*) Where a class is united by a common interest in

12 determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by

13 slight differences in class members' positions." (*Blackie,* 524 F.2d at 901, n.17.)

14             Here, all Class Members have shared a common interest in determining whether Defendant violated

15 wage and hour requirements under state law, including the following issues: (i) whether Defendant paid proper

16 wages to the Class; (ii) whether Defendant provided meal periods to the Class; (iii) whether Defendant

17 provided rest periods to the Class; (iv) whether Defendant paid compensation timely upon separation of

18 employment to former Class Members, and whether waiting-time penalties are available to the Class for

19 violation of California Labor Code § 203; (v) whether Defendant paid compensation timely throughout Class

20 Members' employment; (vi) whether Defendant provided accurate itemized wage statements to the Class;

21 (vii) whether wage statement penalties are available to the Class for violation of California Labor Code § 226;

22 (viii) whether Defendant reimbursed the Class for necessary business expenses; (ix) whether Defendant

23 engaged in unlawful or unfair business practices affecting the Class in violation of California Business and

24 Professions Code §§ 17200–17208; and (x) whether the Class is entitled to penalties pursuant to PAGA.

25 (Moon Decl., ¶ 36.) Accordingly, and given the permissive standard that courts in the Ninth Circuit employ

26 when determining commonality, certification for settlement purposes is appropriate under Rule 23(a)(2).

27             Once it is established that common issues of law or fact exist, for Rule 23(b)(3) purposes, the Court

28 next examines whether those common issues predominate. The predominance inquiry focuses on whether the

class is "sufficiently cohesive to warrant adjudication by representation." (*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).) Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." (*Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).) When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." (*Hanlon*, 150 F.3d at 1022.) It is well settled that the need for determining differing amounts of damages suffered by different class members does not preclude class certification. (*See Blackie*, 524 F.2d at 905; *Wang*, 231 F.R.D. at 613.)

There are common issues that may predominate over individual issues in this litigation. For example: (1) whether Defendant uniformly failed to provide Class Members with legally compliant meal periods and rest breaks; (2) whether Defendant required or permitted employees to work off the clock; (3) whether Defendant provided putative Class Members with itemized wage statements that were inaccurate in violation of Labor Code § 226; and (4) whether Defendant failed to pay all overtime wages due and payable to former employees within the times specified under the California Labor Code. (Moon Decl., ¶ 36.) Because Class Members would have to prove the same issues of law and fact to prevail, and because their potential legal remedies are identical, it would be preferable to resolve all Class Members' claims by means of the Settlement rather than to require each Class Member to litigate his or her individual claims. (*Id.* at ¶ 37.)

### 3.   Typicality

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class." (Fed. R. Civ. P. 23(a)(3).) This factor is also construed permissively. (*See Hanlon*, 150 F.3d at 1019–20.) Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." (*Id.* at 1020.) In other words, named plaintiffs need not be "identically situated" with all other class members; rather, "[i]t is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." (*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).) Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose." (*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).) The typicality requirement is satisfied where "the

PLTFS' NTC OF MTN FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT,
INCLUDING MTN FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENTS; MEMORANDUM

named Plaintiffs raise the same Labor Code violations as other putative class members." (*Id*.)

Here, Plaintiffs raise the same claims as the putative class members and have alleged no other individual claims in this matter. From review of the discovery provided, Plaintiffs' Counsel determined that for purposes of these claims, Defendant's policies and practices are either identical, or sufficiently similar, to raise the same questions of liability, and applied to all Class Members. (Moon Decl., ¶ 37.) Accordingly, typicality is satisfied.

### 4.     Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." (Fed. R. Civ. P. 23(a)(4).) Adequate representation turns on whether a named plaintiff and his counsel "have any conflicts of interest with other class members," and whether a named plaintiff and his counsel will "prosecute the action vigorously on behalf of the class." (*Hanlon*, 150 F.3d at 1020.) Adequacy may be established by the mere fact that counsel are experienced practitioners.

There are no conflicts of interest between Plaintiffs and Class Members, and Plaintiffs have both shown and expressed their willingness to represent Class Members. (Ramirez Decl., ¶¶ 11–20; Holguin Decl., ¶¶ 11–20.) The similarity of the claims asserted and remedies sought by Class Members and Plaintiffs do not suggest any divergent interests held by Plaintiffs, and Defendant did not assert unique defenses against Plaintiffs that it could not assert against any other Class Member. (Moon Decl., ¶ 9.) Also, Plaintiffs do not have any conflicts with their counsel, the Settlement Administrator, or the proposed *cy pes*. (Ramirez Decl., ¶¶ 12–13; Holguin Decl., ¶¶ 12–13.) Furthermore, Plaintiffs' Counsel have substantial class action experience, have been appointed class counsel in many other wage and hour class actions, and can adequately represent the Class. (Moon Decl., ¶¶ 38–57; Bokhour Decl., ¶¶ 6–14; Declaration of Jonathan Melmed in Support of Motion for Final Approval of Class and Representative Action Settlement ["Melmed Decl."], ¶¶ 2, 5–9.)

### 5.     Superiority

In deciding whether to certify a class for settlement purposes, a court considers the following factors to determine whether a class action is superior: (a) class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (c) the desirability or undesirability

of concentrating the litigation of the claims in the particular forum.[5] Some courts have found that the third Rule 23(b)(3) factor is "conceptually irrelevant in the context of a settlement." (*See Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005).) "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." (*Elkins v. Equitable Life Ins. of Iowa*, No. CivA96-296-Civ-T-17B, 1998 WL 133741, at *19 (M.D. Fla. Jan. 23, 1998).)

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court compares a class action with alternative methods for adjudicating the parties' claims; lack of a viable alternative to a class action necessarily means that it satisfies the superiority requirement. (*See Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235–36 (9th Cir. 1996) ["A class action is the superior method for managing litigation if no realistic alternative exists."].) "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." (*Culinary/Bartender Trust Fund*, 244 F.3d at 1163.) In *Culinary/ Bartender Trust Fund*, the Ninth Circuit held that the "case involve[d] multiple claims for relatively small sums" and that the class action clearly served as the only method that would "permit the plaintiffs to pool claims which would be uneconomical to litigate individually." (*Id.*)

Here, a class action is superior as it is on the only method that will allow Class Members "to pool [their individual] claims which would be uneconomical to litigate individually." (*Id.*) The factors articulated in Rule 23(b)(3)(A), (B), and (C) also favor class certification. It is difficult to believe that any Class Members have an interest in individually controlling the prosecution of separate actions, given the relatively small sums involved for any one Class Member. Any Class Member who wants to pursue a separate action had an opportunity to exclude themselves from the Settlement. (Settlement, ¶ 26(w).) Also, it is desirable to concentrate the issues in this forum. The Settlement allows all individuals to resolve similar claims against Defendant through a process that does not even require the submission of a claim form. (*Id.* at ¶ 26(f).)

///

///

---

[5] Fed. R. Civ. P. 23(b)(3)(A)–(C). When a court reviews a class action settlement, it does *not* consider Rule 23(b)(3)(D), the fourth factor, regarding difficulties of managing a class action. (*Amchem Products Inc. v. Woodward*, 521 U.S. 591, 620 (1997) [in deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems".])

**B.     The Class Notice Process Was Successfully Completed Following Preliminary Approval, and the Response Is Overwhelmingly Positive**

The Parties have fulfilled the class notice procedures set forth in the Court's Preliminary Approval Order (Dkt. No. 54) and the Class response has been overwhelmingly positive. ILYM Group, Inc. (the "Administrator") translated the Court-approved Notice into Spanish and sent individual notices to 4,673 Class Members on February 6, 2024. (Rubalcava, ¶¶ 3, 7.) To ensure the majority of Class Members—whose identifies were known based on Defendant's business records—received Class Notice, the Administrator employed reasonable methods, including processing the mailing addresses that were on file in Defendant's records against a National Change of Address ("NCOA") database maintained by the U.S. Postal Service, for purposes of updating and confirming their mailing addresses. (*Id.* at ¶ 6.) To the extent an updated address was found in the NCOA database, the updated address was used for the mailing the Notice; otherwise, the original address provided by Defendant was used for the mailing. (*Id.*) Of the 4,673 Notices mailed out, 299 were initially returned as undeliverable, 1 with a forwarding address which was promptly remailed to the forwarding address provided. (*Id.* at ¶ 8.) The Administrator performed a computerized skip trace on the remaining undeliverable Notices and was thereby able to obtain updated addresses for 197 Notices, and promptly remailed those Notices to the updated addresses. (*Id.*) Ultimately, only 101 Notices were undeliverable. (*Id.* at ¶ 10.)

Additionally, the Response Deadline for Class Members to opt-out, object, or submit a dispute regarding reported work hours was April 8, 2024. (*Id.* at ¶¶ 11–13.) The Administrator received only four Requests for Exclusion, received only one work-hour dispute which was resolved, and did not receive any objections. (*Id.* at ¶¶ 11–13, Exh. B.) Overall, therefore, there is strong support from the Class for final settlement approval. (*See, e.g.*, *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, No. 08–1977–MHM, 2010 WL 3715138, *6 (D. Ariz. Aug. 31, 2010) [finding relatively few objections and requests for exclusion support approval of proposed settlement].)

Factors to be considered in evaluating a class action settlement include "the reaction of the class members to the proposed settlement." (*Kullar v. Foot Locker Retail, Inc.*, 168 Cal.App.4th 116, 128 (2008).) Here, the reaction is undeniably and overwhelmingly positive. Courts have approved class action settlements in lesser circumstances. (*See, e.g.*, *Hughes v. Microsoft Corp.*, No. C98–1646C, C93–0178C, 2001 WL

34089697, *8 (W.D. Wash. Mar. 26, 2001) [finding "class members overwhelmingly support[ed] the settlement" where over 37,000 notices were sent out, 2,745 class members participated in the settlement, 9 objections were submitted, and there were 68 timely opt-outs (less than 1%) and over 20 additional defective or untimely opt-outs, and that "these indicia of the approval of the class of the terms of the settlement support a finding of fairness under Rule 23"] [citing *Hanlon*, 150 F.3d at 1027 [despite vigorous objections and appeal by objectors, considering "fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness," court did not abuse its discretion in approving settlement]].)

In sum, 4,602 Class Members (roughly 99% of the total Class and/or PAGA group) remain in the Settlement Class, there were minimal issues with mailing the Notice as 4,572 Class Members and/or PAGA Employees (roughly 98% of the total) received Notice, only four Requests for Exclusion were submitted, and no objections were received. (Rubalcava Decl., ¶¶ 7–14, Exh. B.) For the foregoing reasons, the Court should find there is overwhelming support for final approval.

**C.**    **The Settlement Falls Squarely Within the Range of Reasonableness and Should Be Finally Approved**

No single criterion determines whether a class action settlement meets the requirements of Rule 23(e). (Fed. R. Civ. P. 23(e).) The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. (*See Staton*, 327 F.3d at 959.) "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." (*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).) Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "an amalgam of delicate balancing, gross approximations and rough justice." (*Id.*) The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." (*Staton*, 327 F.3d at 961.)

As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective. (*Officers for Justice*, 688 F.2d at 625.) Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the

PLTFS' NTC FOR MTN FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT, INCLUDING MTN FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENTS; MEMORANDUM

1   agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." (*Id.*)

2   Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement "unless

3   the fees and relief provisions clearly suggest the possibility that class interests gave way to self interest."

4   (*Staton*, 327 F.3d at 961.)

5       There is a presumption that the negotiations were conducted in good faith. (Newberg, Newberg on

6   Class Actions (3rd ed. 1992) §11.51; *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp.*

7   *v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).) Courts do not substitute their

8   judgment for that of the proponents, particularly where, as here, settlement has been reached with the

9   participation of experienced counsel familiar with the litigation. (*Hammon v. Barry*, 752 F. Supp. 1087

10  (D.D.C. 1990); *In re Armored Car Anti-Trust Litig.*, 472 F.Supp. 1357 (N.D. Ga. 1979) [reversed, in part, on

11  other grounds on appeal]; *Sommers v. Abraham Lincoln Fed. Savings & Loan Ass'n*, 79 F.R.D. 571 (E.D. Pa.

12  1978).) The fact that settlement results from arms-length negotiations following "relevant discovery" creates

13  "a presumption that the agreement is fair." (*Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, C-97-

14  0203 DLJ, C-97-0425 DLJ, C-97-0457 DLJ, 1997 WL 450064, *5 (N.D. Cal. Jul. 18, 1997); *see In re Immune*

15  *Response Sec. Litig.*, 497 F.Supp.2d 1166, 1174 (S.D. Cal. 2007) [settlement approved where informal

16  discovery gave the parties a clear view of the strength and weaknesses of their cases].)

17      Here, the Parties reached a non-collusive settlement after informal discovery and a full day of

18  mediation with the assistance of Steven Rottman, Esq., an experienced and neutral class and PAGA action

19  mediator. (Moon Decl., ¶¶ 10–12.) The Settlement was reached after arm's-length negotiations and

20  discussions regarding the strengths and weaknesses of the claims and defenses. (*Id.* at ¶ 12.) The Parties went

21  into the mediation willing to explore the potential for a settlement of the dispute, but each side was also

22  prepared to litigate their position through trial and appeal if a settlement had not been reached. (*Id.*) As

23  discussed below, the proposed Settlement represents a substantial recovery when compared to the reasonably

24  forecasted recovery for the Class. (*Id.* at ¶ 29.) When considering the risks of litigation, the uncertainties

25  involved in continued litigation, the burdens of proof necessary to establish liability, and the probability of

26  appeal, it is clear the Gross Settlement Amount of $825,000.00 is within the "ballpark" of reasonableness,

27  and that settlement approval is appropriate. (*Id.*)

28      Approval of a class action settlement does not require that discovery be exhaustive. (*See, e.g., In re*

PLTFS' NTC OF MTN FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT,
INCLUDING MTN FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENTS; MEMORANDUM

1  *Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1174 [settlement approved where informal discovery gave

2  the parties a clear view of the strength and weaknesses of their cases].) Here, Plaintiffs obtained discovery

3  from Defendant in preparation for the mediation that resulted in the proposed Settlement. (Moon Decl., ¶ 10.)

4  Based on Plaintiffs' Counsel's review of the time, payroll, and additional records and information provided

5  by Defendant in preparation for mediation, on expert analysis of the sample time and payroll records, and on

6  information from Plaintiffs and other Class Members, Plaintiffs' Counsel were able to evaluate the claims and

7  defenses, and thus estimate Defendant's maximum and risk-adjusted exposure. (*Id.* at ¶ 22.)

8      After analyzing the claims, defenses, and discovery in this matter, Plaintiffs predicted the *realistic*

9  maximum recovery for all claims, including penalties, would be **$1,174,734.95**. (*Id.* at ¶ 23.) This means the

10  **$825,000.00** gross settlement figure represents roughly **70%** of the realistic recovery. (*Id.*) While Plaintiffs

11  would certainly have preferred to recover more (and Defendant would have preferred to pay less), this

12  outcome is in line with a carefully constructed estimate of the current fair value of the case. (*Id.*) The *maximum*

13  calculated reasonable exposure, after removing the *most* implausible or extreme estimated recoveries, is

14  **$10,485, 008.33**, *including* PAGA penalties (which, nevertheless, includes a highly optimistic view of what

15  could be proven in this matter). (*Id.*) The risk-adjusted value of each claim, on a claim-by-claim basis, is as

16  follows:

17      • The estimated exposure for off-the-clock work over the class period was calculated to be

18      **$1,809,662.25** (assuming 15 minutes of off-the-clock work each shift due to standing in lines

19      awaiting their turn to clock-in and Covid screenings). With risk factor discounts for certification

20      (estimated at 0.3) and liability proof (estimated at 0.4), the current value of that claim is estimated

21      by Plaintiffs' Counsel to be only **$217,159.47**. (*Id.*)

22      • The estimated exposure for improper regular rate calculation of overtime, meal premiums, sick

23      pay (not considering additional remuneration) as well as failure to pay split shift premiums over

24      the class period was calculated to be **$39,084.33**. With risk factor discounts for certification

25      (estimated at 0.5) and liability proof (estimated at 0.5), the current value of that claim is estimated

26      by Plaintiffs' Counsel to be only **$9,771.08**. (*Id.*)

27      • The reasonably estimated exposure for rest break violations over the class period was calculated

28      at **$3,935,525.75**, but with low chances of certification and proof of liability (30% and 40%

respectively) for a risk-adjusted exposure of **$472,263.09** (based on an extreme estimate of two rest period violations for every Class Member in 100% of their work weeks). (*Id.*)

- The reasonably estimated exposure for meal break violations over the class period was calculated at **$54,876.00**, which accounted for meal premiums paid by Defendant before any risk reductions, but with low chances of certification and proof of liability (40% and 40% respectively) for a risk-adjusted exposure of **$8,780.16** (based on an estimate of two meal period violations for every Class Member in 50% of their work weeks). (*Id.*)

- The reasonably estimated exposure for unreimbursed expenses over the class period was calculated at **$931,454.50** before any risk reductions, but with low chances of certification and proof of liability (30% and 30% respectively) for a risk-adjusted exposure of **$83,830.91**. (*Id.*)

- Risk-adjusted penalty recoveries for California Labor Code § 226 wage statement and California Labor Code § 203 waiting time penalties were estimated to be approximately with low chances of certification and proof of liability (30% and 30% respectively) **$121,801.50** and **$172,703.75**, respectively, on maximum exposures of **$1,353,350.00** and **$1,918,930.50**, respectively (not only are the §§ 203 and 226 penalties entirely dependent on the success of the off-the-clock claim, they both must also overcome the defense that Defendant did not intend any underpayment; additionally, the § 226 penalty has a one-year statute of limitations period). (*Id.*)

- PAGA penalties were calculated as having a maximum realistic exposure of **$442,125.00**, but a risk adjusted (20% discount) value of **$88,425.00**, after factoring in risks of reduction in penalties pursuant to Court discretion (Cal. Lab. Code § 2699(e)(2)) and the high risk of the inability to prove violations for all PAGA Employees. (*Id.*)

It would also be appropriate to evaluate the result by examining only the underlying wage claims at issue, excluding penalties and interest.[6] Under that metric, the realistic maximum recovery for the underlying

---

[6] The exclusion of interest and penalties from the fairness evaluation is proper because, first, PAGA penalties are discretionary (*see* Lab. Code § 2699(e)(2) [stating the court in its discretion "may award a lesser amount than the maximum civil penalty amount specified by this part . . ."]), and second, courts evaluate the strength of a proposed settlement without taking potential penalties or interest into consideration. (*See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 955 (9th Cir. 2009); *see also Miller v. CEVA Logistics U.S.A., Inc.*, No. 2:13-cv-01321-TLN-CKD, 2015 WL 729638, at *7 (E.D. Cal. Feb. 19, 2015) [court utilized

wage claims, *excluding* penalties, is estimated to be **$791,804.70**, meaning Plaintiffs negotiated a gross settlement figure *exceeding* the value of the estimated risk-adjusted recovery (excluding §§ 203, 226, and PAGA penalties). (Moon Decl., ¶ 23.) Viewed either way, this Settlement achieves the goals of Rule 23(e).

Moreover, considering the risks with certification and proof on the merits, this Settlement is an excellent result for the Class, particularly because Class Members will receive timely, guaranteed relief and will avoid the risk of not being able to recover anything. (*Id.*) On that basis, it would be unwise to pass up this settlement opportunity. (*Id.*)

While Plaintiffs are confident in the merits of their claims, a legitimate controversy exists as to each cause of action. (*Id.* at ¶ 24.) Plaintiffs also recognize that proving the amounts of wages owed to each Class Member would be an expensive, time-consuming, and uncertain proposition. (*Id.*) Plaintiffs' Counsel are also of the opinion that because the issues here are fairly contested, there is a possibility of the Court not awarding the PAGA penalties even if Plaintiffs prevailed on the merits due to the largely discretionary nature of awarding PAGA penalties. (*Id.* at ¶ 25; Lab. Code § 2699(e)(2).) In other words, were this matter to go to trial, any award granted would be at the discretion of the Court and subject to a substantial reduction. (Moon Decl., ¶ 25.)

The Settlement obviates the significant risks that this Court may deny certification of all or some of Plaintiffs' claims. (*Id.* at ¶ 26.) Indeed, the assigned certification probabilities far exceed the rate of certification in contested motions in California over the past five years, based upon data available through the California Courts website. (*See* Hilary Hehman, Findings of the Study of California Class Action Litigation, 2000-2006, at C11 (March 2009), https://www.courts.ca.gov/documents/class-action-lit-study.pdf [finding that only 21.4% of all class actions were certified either as part of a settlement or as part of a contested certification motion].) Given that well under 20% of all cases filed in California as proposed class actions are ultimately certified by way of a contested motion, and a similar trend is seen in federal courts, it is fair to say that, if anything, the use of high estimates for certification *overstates* the realistic current claim value.

Furthermore, even if Plaintiffs were able to pursue their claims on a class-wide basis and obtain certification of all or some of the claims, continued litigation would be expensive, involving a trial and

---

calculation of a defendant's exposure exclusive of interest and penalties to determine whether the settlement fell within the range of possible approval].)

PLTFS' NTC OF MTN FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT,
INCLUDING MTN FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENTS; MEMORANDUM

possible appeals, and would substantially delay and reduce any recovery by the Class. (Moon Decl., ¶ 26.) These risks are non-exhaustive.[7] (*Id.*) While Plaintiffs' Counsel remain confident that we possess credible strategies for responding to the legal and factual risks facing them, those risks cannot be disregarded. (*Id.*) Plaintiffs' Counsel carefully considered the risks created by all these uncontrollable factors when evaluating the reasonableness of this proposed Settlement. (*Id.*)

This Settlement avoids the risks, burdens, and the accompanying expense of further litigation. (*Id.* at ¶ 27.) Although the Parties have engaged in a significant amount of investigation, discovery, and class-wide data analysis, they have not conducted expert discovery or taken depositions. (*Id.*) Moreover, preparation for class certification and a trial would remain for the Parties as well as the prospect of appeals in the wake of a disputed class certification ruling for Plaintiffs and/or any summary judgment ruling. (*Id.*) As a result, the Parties would incur considerably more attorneys' fees and costs through trial. (*Id.*)

The Settlement amount is, of course, a compromise figure. (*Id.* at ¶ 29.) Yet, considering the uncertainties of protracted litigation, as discussed above, the Settlement amount reflects a fair and reasonable recovery for the Settlement Class Members. The **Net Settlement Amount** available for individual Settlement Class Payments is currently estimated to be **$400,389.64** for a Class size of **4,602 participating Settlement Class Members**.[8] (Rubalcava Decl., ¶¶ 14–15.) As a result, it is estimated each Settlement Class Member is

---

[7] These risks include, but are not limited to: (i) the risk that Plaintiffs would be unable to establish liability for allegedly unpaid straight time or overtime wages (*see Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39, n.33 (2014) [*citing Dilts v. Penske Logistics, LLC*, No. 08-cv-318-CAB (BLM), 2014 WL 305039 (S.D. Cal. Jan. 21, 2014) [dismissing certified off-the-clock claims based on proof at trial]); (ii) the risk that uncertainties pertaining to the ultimate legality of Defendant's policies and practices could preclude class-wide awards of statutory penalties under California Labor Code §§ 203 and 226(e); (iii) the risk that individual differences between Class Members could be construed as pertaining to liability, and not solely to damages (*see Duran*, 59 Cal. 4th at 19); (iv) the substantial risk that potential differences in the work experiences of Class Members assigned to different client locations would make both certification and proof of liability prohibitively unlikely; (v) the substantial risk to certification posed by dispute resolution agreements executed by Class Members; (vi) the risk that any civil penalties award under the PAGA could be reduced substantially by the Court in its discretion (*see* Cal. Lab. Code § 2699(e)(1)); (vii) the risk that class treatment could be deemed improper as to one or more claims except for settlement purposes, including the rest break and meal period claims, which have been challenging to certify for many years even after *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012) [holding that employers do not need to affirmatively ensure that no work is performed during meal breaks], as well as the off-the-clock claim, which is a claim that has proven to be extremely difficult to certify by its very nature; and (viii) the risk that lengthy appellate litigation could ensue. (Moon Decl., ¶ 26, n.2.)

[8] The estimated Net Settlement Amount available for participating Settlement Class Members is $825,000.00 less the following: $15,000.00 for the Class Representative Service Payments, $30,000.00 for

1  eligible to receive an average gross benefit of approximately **$87.00** prior to tax withholdings on the wage

2  portion of payments. (*Id.* at ¶ 15.) Additionally, there are **3,211 PAGA Employees** who will each receive an

3  average of **$6.62** from the 25% share of PAGA Allocation ($21,250.00). (*Id.* at ¶¶ 14, 16.)

4      The actual amounts to Settlement Class Members and PAGA Employees will vary based on each

5  individual's duration of work during the Class Period or PAGA Period, respectively; thus, those who worked

6  longer for Defendant during the relevant period will receive a benefit greater than the estimated average. (*Id.*

7  at ¶¶ 15–16; Settlement, ¶¶ 26(i)–(j).) The Settlement Administrator estimates the highest and lowest gross

8  Settlement Class Payments will be $872.56 and $0.04, respectively, and the highest and lowest gross

9  Settlement PAGA Payments will be $22.76 and $0.30, respectively. (Rubalcava, ¶¶ 15–16.)

10      By obtaining reasonable value for their claims considering the substantial risks of litigation, Plaintiffs

11  clearly achieved a fair, reasonable, and adequate settlement that merits final approval.

12      **D.**    **<u>The Amounts Requested for Attorneys' Fees, Litigation Costs, Service Payments, and</u>**

13      **<u>Administration Costs Are Reasonable And Should Receive Final Approval</u>**

14      **1.**    **Plaintiffs' Counsel Seek Only Actual Costs**

15      Successful counsel are entitled to recover the out-of-pocket litigation expenses reasonably incurred in

16  investigating, prosecuting, and settling the case. (*Staton*, 327 F.3d at 974.) Here, the Settlement provides for

17  reimbursement of costs of up to $30,000.00. (Settlement, ¶ 26(m).) Counsel seek a total award of **$19,610.36**

18  for costs incurred as of the drafting of this motion, which will be distributed as follows: $17,931.53 to Moon

19  Law Group, PC; and $1,678.83 to Bokhour Law Group, P.C. (Moon Decl., ¶¶ 17, 66, Exh. 3; Bokhour Decl.,

20  ¶¶ 16–17, Exh. A.) These costs were reasonably and actually incurred in prosecuting this action on behalf of

21  the Class. (Moon Decl., ¶ 66; Bokhour Decl., ¶¶ 16–17, Exh. A.) Moreover, these expenses e below the

22  maximum amount ($30,000.00) allowed in the Settlement, and the remainder will revert to Settlement Class

23  Members. (Settlement, ¶ 26(m).) Therefore, the request is reasonable.

24      **2.**    **Plaintiffs' Counsel Request a Fees Award Based on the Common**

25      **Fund/Percentage Method, Consistent with California Substantive Law**

26      When a district court exercises diversity jurisdiction over a case consisting of exclusively California

27  ⸺⸺⸺⸺⸺⸺⸺

28  the Settlement Administration Costs Payment, $85,000.00 for the PAGA Allocation, $275,000.00 for the
    Attorneys' Fees Payment, and $19,610.36 for the Litigation Costs Payment. (Rubalcava Decl., ¶ 15.)

1 | claims, as here, California substantive law applies to the calculation of the attorneys' fee award. (*See Mangold*
2 | *v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478–79 (9th Cir. 1995) [finding state law to be applicable in "in
3 | determining not only the right to fees, but also the method of calculating the fees"]; *see also Rodriguez v.*
4 | *Disner*, 688 F.3d 645, 653, n.6 (9th Cir. 2012) ["If . . . we were exercising our diversity jurisdiction, state law
5 | would control whether an attorney is entitled to fees and the method of calculating such fees."]); *Gonzalez v.*
6 | *So. Wine & Spirits of Am., Inc.*, 555 Fed.Appx. 704, 704–05 (9th Cir. 2014) [finding district court abused its
7 | discretion in applying federal law instead of California substantive law to the calculation of attorneys' fees,
8 | holding that, because the court exercised diversity jurisdiction, California substantive law should have been
9 | applied].)

10 | California courts have long awarded attorneys' fees as a percentage of the benefit created by counsel
11 | in pursuing claims on behalf of a class. (*See, e.g., Serrano v. Ivy Baker Priest*, 20 Cal.3d 25 (1977).) The
12 | California Supreme Court has held, "when a number of persons are entitled in common to a specific fund, and
13 | an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that
14 | fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the fund." (*Id.* at 34.) The purpose of
15 | this approach is to "spread litigation costs proportionately among all the beneficiaries so that the active
16 | beneficiary does not bear the entire burden alone." (*Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th
17 | Cir. 1977).)

18 | In *Quinn v. State of California*, 15 Cal.3d 162, 167 (1975), the California Supreme Court stated, "one
19 | who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may
20 | require those passive beneficiaries to bear a fair share of the litigation costs." Similarly, in *City and County of*
21 | *San Francisco v. Sweet*, 12 Cal.4th 105, 110–11 (1995), the California Supreme Court recognized that the
22 | common fund doctrine has been applied "consistently in California when an action brought by one party
23 | creates a fund in which other persons[ ] are entitled to share." The reasons for applying the common fund
24 | doctrine include:

25 | > fairness to the successful litigant, who might otherwise receive no benefit because his
26 | > recovery might be consumed by the expenses; correlative prevention of an unfair
   | > advantage to the others who are entitled to share in the fund and who should bear their
27 | > share of the burden of its recovery; encouragement of the attorney for the successful
   | > litigant, who will be more willing to undertake and diligently prosecute proper litigation
28 | > for the protection or recovery of the fund if he is assured that he will be properly and
   | > directly compensated should his efforts be successful.

(*Id.* at 111.)

Several courts have expressed frustration with the alternative "lodestar" approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records. Commenting on the lodestar approach, Chief Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation*, 723 F.Supp.1373, 1375 (N.D. Cal. 1989) [emphasis added]:

> **This court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!"** Not only do the *Lindy* and *Kerr–Johnson* analyses consume an undue amount of court time with little resulting advantage to anyone, but, in fact, it may be to the detriment of the class members.

(*Id.*) The percentage approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. (*Id.* at pp. 1378–79.) California Courts now routinely use the percentage of the common fund approach to determine the award of attorney's fees. (*See*, *e.g.*, *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378–79 (9th Cir. 1995) [approving attorneys' fee award of 33%].)

### 3.   The Requested Fee Award (33 1/3%) Is In Line with Typical Cases

According to a leading treatise on class actions: "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." (Newberg, Newberg on Class Actions (3rd ed. 1992) § 14.03.) Attorneys' fees that are 50% of the fund are typically considered the upper limit, with 30–40% commonly awarded in cases where the settlement is relatively small. (*Id.*; *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297 (N.D. Cal. 1995) [stating that most cases where 30–50% was awarded involved "smaller" settlement funds of under $10 million].)

Here, the request for attorneys' fees equal to 33 1/3% of the gross settlement fund is in line with the prevailing guidelines established under California case law and in academic literature and is consistent with awards in California. (*Compare* Settlement, ¶ 26(m), *with Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66, n.11 (2008) ["Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."].) Accordingly, Plaintiffs'

Counsel respectfully request the Court approve attorneys' fees as negotiated by the Parties.

The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should use a "benchmark" percentage of 25% of the total fund. (*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).) The percentage can be adjusted upwards where the benefits obtained, risks undertaken by counsel, and the work necessary to achieve those results support such an adjustment of the benchmark. (*See Bergman v. Thelen LLP*, No. 3:08-cv-05322-LB, 2016 U.S. Dist. LEXIS 170861, at *21 (N.D. Cal. Dec. 9, 2016).)

In fact, while the Ninth Circuit identified twenty-five percent as a fee percentage that is presumptively reasonable, the custom and practice in class actions is to award approximately one-third of a fund as a fee award. (*See Chavez*, 162 Cal. App. 4th at 66, n.11; *Morris v. Lifescan, Inc.*, 54 F.App'x 663, 664 (9th Cir. 2003) [affirming 33% fee award]; *In re Pac. Enter. Sec. Litig.*, 47 F.3d at 379 [affirming same]; *Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB, 2007 WL 3492841, *4 (E.D. Cal. Nov. 14, 2007) [stating "fee awards in class actions average around one-third of the recovery" and awarding fees in that amount]; *Zamora v. Lyft, Inc.*, No. 3:16-cv-02558-VC, 2018 WL 4657308, at * 3 (N.D. Cal. Sept. 26, 2018) [finding one-third award is "consistent with the Ninth Circuit authority and the practice in this District"].) Accordingly, Plaintiffs' Counsel respectfully request the Court award higher than its 25% benchmark.

**4.    This Matter Involves a "Fee-Shifting" Provision of the California Labor Code**

California Labor Code sections 218.5, 226, 1194, 2699, and 2802 provide for the recovery of reasonable fees and costs of suit, for the claims made in this action. (Cal. Lab. Code §§ 218.5, 226, 1194, 2699(g)(1), 2802(d).) Under these sections, Plaintiffs would be permitted to recover their actual attorneys' fees, even if those fees were larger than the total class recovery at the conclusion of this case. (*Id.*) This Settlement is beneficial in that it limits the risk of continued expenses and consumption of time, energy, and resources facing Defendant while at the same time rewarding Plaintiffs' Counsel for their decision to assume risk by taking on this matter. In fact, prosecution of this action involved significant financial risk for Plaintiffs' Counsel, who agreed to represent Plaintiffs on a contingency fee basis with no guarantee of recovery. (Moon Decl., ¶¶ 60–67; *see* Bokhour Decl., ¶¶ 15–16; *see* Melmed Decl., ¶¶ 11.)

**5.      The Fee Request Satisfies California and Ninth Circuit Criteria**

California and the Ninth Circuit, and all federal courts, for that matter, use similar criteria to assess a fee request attendant to a motion for final approval, including: (i) the results achieved on behalf of the class; (ii) class counsel's experience, reputation and ability; (iii) the time and labor required by the litigation; (iv) whether class counsel was precluded from other work; (v) the complexity of the litigation; and (vii) the contingent nature of the litigation. (*Serrano*, 20 Cal. 3d at 49; *Vizcaino*, 290 F.3d at 1048–50 [identifying similar criteria]; *see also* Manual for Complex Litigation, Fourth § 21.71 at 524–27 (2008) [survey of federal criteria similar to California criteria].)

**a)      *A reasonable result was achieved on behalf of the Class.***

The benefit achieved on behalf of class members defines a primary yardstick against which any fee motion is measured. (*See Serrano*, 20 Cal. 3d at 49; *Vizcaino*, 290 F.3d at 1048.) One of the most straightforward measures of a settlement's success from the plaintiff's perspective is the average amount available to each class member from the settlement fund. Here, for the 4,6002 participating members of the Settlement Class, the average and highest individual Settlement Class Payments are approximately $87.01 and $872.67, respectively. (Rubalcava, ¶ 15.) Given the risks discussed above, this result is commendable.

How class members respond to a class action settlement is typically addressed in concert with courts' assessments of a settlement's overall benefit to class members. (*See generally Vizcaino, supra.*) State and federal courts alike take the measure of a settlement's "fairness" with reference to the class members' reaction, and specifically the extent to which class members object, and through their objections imply a settlement's unfairness. (*See, e.g.*, *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152–53 (2000) [only nine objectors from a class of 5454 was an "overwhelmingly positive" fact that supported approval of the settlement]; *Reynolds v. Nat'l Football League*, 584 F.2d 280 (8th Cir. 1978) [16 objectors out of 5400 strongest evidence of no dissatisfaction with settlement among class members]; *Am. Eagle Ins. Co. v. King Res. Co.*, 556 F.2d 471, 478 (10th Cir. 1977) [finding only one objector "of striking significance and import"].) As discussed above, the Class reaction is overwhelming positive, as evidenced by zero objections submitted out of a Settlement Class of 4,602 participants. (Rubalcava, ¶ 12.) The gross settlement figure is roughly 70% of the risk-adjusted estimated value of the Class recovery (including penalties). (Moon Decl., ¶ 62(c)(5).) Considered against the size of the Class, the risks posed by continued

litigation, and the importance of the employment rights and a speedy recovery,[9] the relief obtained through the Settlement represents a very strong result for the Class. (*Id.*)

**b)    *The experience, reputation, and ability of Class Counsel Support the Fee Award.***

California law also recognizes the reputative, skill, and experience of attorneys as appropriate criteria for evaluating a fee motion. (*Flannery v. Cal. Highway Patrol*, 61 Cal. App. 4th 629, 647 (1995); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003).) Here, Plaintiffs' Counsel possess considerable expertise in litigating class actions, as demonstrated by their past experience in pursuing class actions on behalf of consumers and employees. (Moon Decl., ¶¶ 39–55; Bokhour Decl., ¶¶ 6–14; Melmed Decl., ¶¶ 2, 5–9.) They have been involved as lead or co-counsel in several wage and hour class actions that resulted in millions in recovery. (Moon Decl., ¶¶ 39–55; Bokhour Decl., ¶¶ 6–14; Melmed Decl., ¶ 8.) Their experience was integral in evaluating the strengths and weaknesses of the instant case and the reasonableness of the proposed Settlement. (Moon Decl., ¶ 56.) Based on these and other factors, Plaintiffs' Counsel have frequently received fee awards of this percentage from the gross recovery for the class. (*See, e.g.*, *id.* at ¶¶ 42, 46, 49, 53.) Because it is reasonable to compensate successful counsel commensurate with their reputative, skill, and experience, the requested fee award is supported here.

**c)    *The effort required by the litigation justifies the fee.***

California and federal law also look to the time and labor required in connection with the litigation and settlement of a class action for which final approval is sought. (*Serrano*, 20 Cal. 3d at 49; *Vizcaino*, 290 F.3d at 1048–50.) Compared to the reasonable value of the claims involved in this matter, Plaintiffs' Counsel expended substantial effort to achieve the settlement result. (Moon Decl., ¶ 62(a); Bokhour Decl., ¶ 12; Melmed Decl., ¶ 14.) The "time and labor" criterion weighs in favor of an award of the requested fees.

**d)    *Plaintiffs' Counsel were precluded from other employment.***

Another of the criteria for the evaluation of a preliminarily approved fee request is whether the settled

---

[9] Wage and hours laws "concern not only the health and welfare of the workers themselves, but also the public health and general welfare." (*Cal. Grape & Tree Fruit League v. Indus. Welfare Comm'n*, 268 Cal. App. 2d 692, 703 (1969).) California's overtime laws "are to be construed so as to promote employee protection." (*Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 340 (2004).) Courts have also long acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system. (*Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 434–35 (2000).) As a practical matter, therefore, privately initiated class actions are the primary mechanism for enforcement of California's labor code protections.

1   litigation resulted in counsel's foregoing other employment. (*Serrano*, 20 Cal. 3d at 49; *In re Pub. Serv. Co.*,

2   No. 91-CV-536-HRM, 1992 U.S. Dist. LEXIS 16326, at *9 (S.D. Cal. July 28, 1992) [the opportunity cost

3   of being precluded from representing other clients in other cases "weighs in favor of an award of one-third of

4   the common fund"].) Here, Plaintiffs' Counsel was precluded from other employment as a result of agreeing

5   to undertake the class action claims against Defendant, thereby committing to pursue this matter to its

6   conclusion and placing their fiduciary duty to the Class ahead of all prospective new clients. (Moon Decl., ¶

7   62(c)(4).) This factor supporting the requested fee award.

8               **e)**    ***The complexity of the legal and factual issues justifies the fee.***

9        California law recognizes that the litigation's general complexity and "difficulty of the questions

10  involved, and the skill in presenting them" are properly considered. (*Serrano*, 30 Cal. 3d at 49; *Wershba v.*

11  *Apple Comput.*, 91 Cal. App. 4th 224, 245 (2001).) Practice in the narrow field of wage and hour litigation

12  requires skill and knowledge concerning the rapidly evolving substantive law (state and federal) as well as

13  the procedural law of class action litigation. (Moon Decl., ¶ 54.) Here, Plaintiffs are represented by skilled

14  and successful legal counsel in wage and hour class and PAGA actions. (*Id.* at ¶ 62(c)(2).) This case required

15  experienced and competent lawyers, as well as expertise in the issues presented herein. (*Id.*) Defendant's

16  contentions underscore the risk of prevailing at class certification and trial, and any of these obstacles could

17  have prevented recovery completely. (*Id.*)

18             **f)**    ***Plaintiffs' Counsel assumed substantial contingency risk.***

19       Ninth Circuit and California state courts regard circumstances in which class counsel's work is wholly

20  contingent as a factor weighing in favor of approving a negotiated fee award that approximates market rates.

21  (*Ketchum v. Moses*, 24 Cal. 4th 1122, 1132–33 (2001).) The possibility of no recovery is only one of the

22  uncertainties involved in taking on such a case. Other uncertainties are the amount that will be recovered,

23  uncertainty as to the cost, both in effort and expenses, and uncertainty about how much time will pass before

24  the recovery is obtained. (*See e.g., id.* at 1138.)

25       Here, Plaintiffs' Counsel invested significant time and resources into the case, with payment deferred

26  to the end of the case, and then, of course, contingent on the outcome. (Moon Decl., ¶¶ 62(c)(1), 67.) The

27  outlay of time and money that Plaintiffs' Counsel exerted in this case has been significant, including hours

28  spent investigating, analyzing, researching, litigating, and negotiating a favorable resolution of this case. (*Id.*

at ¶ 67.) In total, Plaintiffs' Counsel have spent an approximate total of 216.9 combined to-date hours. (Moon Decl., ¶ 60; Bokhour Decl., ¶ 15; Melmed Decl., ¶ 14.) Plaintiffs' Counsel anticipate they will expend additional hours to obtain and monitor final approval of the Settlement and requested awards, oversee the settlement administration process and distribution of funds, and communicate with Plaintiffs and Class Members. (Moon Decl., ¶ 61.) Further, Plaintiffs' Counsel have incurred at least $19,610.36 in unreimbursed litigation costs to-date. (*Id.* at ¶ 66.) Plaintiffs' Counsel also bear the risk of taking whatever actions are necessary if Defendant fails to pay. (*Id.* at ¶ 61.) This factor supports the requested fee award.

### 6.    While a Lodestar Analysis Is Not Necessary, Courts May Perform a Cross-Check to Award Fees

Despite the widely recognized limitations of the so-called "lodestar" method, California and federal courts recognize the utility of a lodestar "cross-check." (*Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 46 (2000).) A lodestar "cross-check" analysis typically happens in three steps. (*Cundiff v. Verizon Cal.*, 167 Cal. App. 4th 718 (2008); *Vizcaino*, 290 F.3d at 1047.) First, a trial court must determine a baseline guide or "lodestar" figure based on the time spent and reasonable hourly compensation for each attorney involved in the case. (*Serrano*, 20 Cal. 3d at 48.) Second, the court sets a reasonable hourly fee to apply to the time expended, with reference to the prevailing rates in the geographical area in which the action is pending. (*Bihun v. AT&T Info. Sys.*, 13 Cal. App. 4th 976, 997 (1993) [16 years ago, affirming a $450 per hour rate for a Southern California litigation attorney].) Finally, a "multiplier" of the base lodestar is set with reference to the factors described above. (*Serrano*, 20 Cal. 3d at 48–49; *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002).) Across all jurisdictions, multipliers of up to four are frequently awarded. (*Wershba*, 91 Cal. App. 4th at 255; *Been v. O.K. Indus., Inc.*, No. CIV–02–285–RAW, 2011 WL 4478766, *11 (E.D. Okla. Aug. 16, 2011) [citing a study "reporting [an] average multiplier of 3.89 in survey of 1,120 class action cases" and finding that a multiplier of 1.22 would be "per se reasonable"].)

Here, Plaintiffs' Counsel current combined lodestar is **$152,004.50**, which breaks down as follows: $128,855.00 lodestar for Moon Law Group, PC based on roughly 184.9 hours at their customary rates; $14,374.50 lodestar for Melmed Law Group P.C. based on roughly 18.5 hours at their customary rates; and $8,775.00 lodestar for Bokhour Law Group, P.C. based on roughly 13.5 hours at their customary rates. (Moon Decl., ¶ 60; Melmed Decl., ¶ 14; Bokhour Decl., ¶¶ 13–15.) As previously noted, there are additional hours

PLTFS' NTC OF MTN FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT, INCLUDING MTN FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENTS; MEMORANDUM

not reflected in the foregoing lodestar, including time spent by legal assistants to-date as well as attorney time that will be spent following this motion filing. (Moon Decl., ¶ 61.) Plaintiffs' Counsel estimate they will commit *no less than* 15 hours, although likely more time, to these additional tasks, which results in roughly **$13,500.00** additional lodestar hours for a total lodestar of **$165,504.50**. (*Id.*) The current lodestar figure requires a multiplier of roughly **1.809** to align it with the requested fee ($275,000 / $152,004.50). Factoring in additional estimated lodestar hours, the figure requires a multiplier of roughly 1.662 ($275,000 / $165,504.50). Accordingly, a lodestar cross-check affirms that the requested fee award does in fact fall within the range of reasonableness.

### 7.    The Service Payments to Plaintiffs Are Reasonable

Service payment awards serve to reward a named plaintiff for the time and effort expended on behalf of the class, and for exposing himself to the significant risks of litigation. (*W. Publ'g Corp.*, 563 F.3d at 958–59.) "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." (*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001).) In *Coca-Cola*, for example, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process, and taking the risk of stepping forward on behalf of the class. (*Id.*; *see also Van Vranken*, 901 F. Supp. at 300 [approving $50,000 participation award].)

Here, Plaintiffs request the Court grant each of them a service payment of $7,500.00 ($15,000.00 total), which is reasonable given the services provided and risks undertaken by Plaintiffs, including the potential for difficulties in obtaining future employment. (Ramirez Decl., ¶¶ 21–28; Holguin Decl., ¶¶ 21–28.) Taking the risk of filing a lawsuit against an employer deserves reward. Additionally, Plaintiffs were actively involved in the litigation and settlement negotiations of this Action, and they have worked diligently with counsel. (Moon Decl., ¶¶ 30–32; Ramirez Decl., ¶¶ 21–28; Holguin Decl., ¶¶ 21–28.) Plaintiffs estimate they put in roughly 60 combined hours of their own time. (Ramirez Decl., ¶ 27; Holguin Decl., ¶ 27.) As a direct result of Plaintiffs' time, effort, and risks assumed in volunteering themselves as the named Plaintiffs and Class Representatives, they have generated substantial benefits for the Class, including an estimated Net Settlement Amount of $421,690.54 for distribution to Settlement Class Members and/or PAGA Employees. (Rubalcava, ¶ 15.) Moreover, Plaintiffs will provide a general release as a condition of the enhancement,

which further supports reasonableness. (Settlement, ¶ 26(n).)

### 8.    The Costs of Administration Are Reasonable

ILYM Group, Inc., an experienced third-party administrator, was appointed at preliminary approval to administer the notice and settlement distributions in this matter. (Moon Decl., ¶ 20.) Performing in all respects as required by the Settlement to date, the final cost of administration, including future work following a final approval order, is $30,000.00. (*Id.* at ¶ 20, n.1; Rubalcava Decl., ¶ 17.) Administration of this Settlement for 4,669 Settlement Class Members and/or PAGA Employees occurred without any issues to date. (*See generally* Rubalcava Decl.) ILYM Group, Inc. will continue to perform administration services following a final approval order, including the calculation and distribution of payments and tax forms as well as posting a copy of Judgment online for no less than 90 calendar days following entry thereof. (*Id.* at ¶¶ 3, 17.)

## V.    **CONCLUSION**

Plaintiffs negotiated a settlement that resolves claims and recovers money for 4,669 Settlement Class Members and/or PAGA Employees. This Settlement is fair, reasonable, and adequate, especially given the claims and the potential defenses to them and to class certification. Plaintiffs respectfully ask the Court to grant final approval of the Settlement, including the motion for an award of attorneys' fees and costs, and adopt the [Proposed] Final Approval Order and Judgment submitted herewith.

Respectfully submitted,

Dated: May 1, 2024              **MOON LAW GROUP, PC**

By: /s/ *Allen Feghali*
Kane Moon
Allen Feghali
Charlotte Mikat-Stevens

*Attorneys for Plaintiff Maria Bustos Ramirez*

Dated: May 1, 2024              **MELMED LAW GROUP P.C.**

By: /s/ *Meghan Higday*
Jonathan Melmed
Meghan Higday

1  Dated: May 1, 2024                                **BOKHOUR LAW GROUP, P.C.**

2
                                           By: /s/ *Mehrdad Bokhour*
3                                               Mehrdad Bokhour

4                                          *Attorneys for Plaintiff Ramona Holguin*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTFS' NTC OF MTN FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT,
INCLUDING MTN FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENTS; MEMORANDUM