1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA BUSTOS RAMIREZ, et al., | Case No.  1:22-cv-00542-SAB |
| Plaintiffs, | ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS IN PART WITH REDUCTION IN FEES AND AWARDS |
| v. | |
| MERRILL GARDENS, LLC, | |
| Defendant. | (ECF Nos. 55, 56, 58) |

## I.

## INTRODUCTION

Currently before the Court is Plaintiffs' motion for final approval of a class action and collective action settlement, and Plaintiffs' motion for attorneys' fees, costs, and incentive awards.[1]  (ECF Nos. 55, 56.)  For the reasons discussed below, Plaintiffs' motion for final approval of the class action settlement is granted in part with a reduction in fees and awards.

## II.

## BACKGROUND

### A.    Procedural History

On March 8, 2022, Plaintiff Maria Bustos Ramirez ("Ramirez") filed a putative class action complaint in the Superior Court of the State of California for the County of Los Angeles, entitled

---

[1] The parties have consented to the jurisdiction of a magistrate judge, and this matter has been assigned to the undersigned for all purposes.  (ECF Nos. 32, 33, 34.)

1   Maria Bustos Ramirez v. Merrill Gardens, LLC, Case No. 22STCV08363 ("Ramirez Action").
2   (See ECF No. 1.)  On April 18, 2022, this action was removed to the United States District Court
3   for the Central District of California.  (See ECF No. 1.)  On May 5, 2022, pursuant to the parties'
4   stipulation, the Ramirez Action was transferred to the United States District Court for the Eastern
5   District.  (ECF Nos. 14, 15, 16.)  On June 15, 2022, Plaintiff Ramirez filed a first amended
6   complaint ("FAC").  (ECF No. 21.)

7        On June 6, 2022, Plaintiff Holguin filed the Holguin Action, a putative class and PAGA
8   action.  (See Holguin v. Merrill Gardens, LLC, 1:22-cv-01042-SAB (E.D. Cal.) ("Holguin Action,
9   ECF No. 1-1 at 1.[2])  On July 8, 2022, the Holguin Action was removed to the United States
10  District Court for the Central District.  (See Holguin Action, ECF No. 1.)  On August 16, 2022,
11  pursuant to the parties' stipulation, the Holguin Action was transferred to the United States District
12  Court for the Eastern District (both actions together the "Action").  (See Holguin Action, ECF
13  Nos. 16, 17, 18.)  On October 31, 2022, pursuant to a notice of related cases, the Holguin Action
14  was ordered related to the Ramirez Action.  (See Holguin Action, ECF Nos. 22, 23.)

15       On January 24, 2023, Plaintiff filed a motion for preliminary approval of class action and
16  PAGA settlement, and for certification for settlement purposes, in the Ramirez Action.  (ECF No.
17  28.)  On November 7, 2023, pursuant to the parties' stipulation, the Ramirez Action and the
18  Holguin Action were consolidated, with the Ramirez Action being the lead case, and the Holguin
19  Action the member case. (ECF No. 43.)   On January 10, 2024, an order issued granting
20  preliminary approval of the class action settlement and setting a final approval hearing.  (ECF No.
21  54.)

22       On May 1, 2024, Plaintiff filed a motion for final approval of the class and representative
23  action settlement which includes a motion for attorney fees.  (ECF No. 55.)   On May 15, 2024,
24  Defendant filed a statement of non-opposition to the motion for final approval.  (ECF No. 56.)

25       The Court held a hearing on Plaintiff's motion for final approval on May 29, 2024.
26  Counsel Allen Feghali appeared by video for Plaintiff Ramirez and counsel Diane O'Malley and

27

28  [2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

Samantha Botros appeared by video for Defendant.  (ECF No. 57.)  There was no appearance at the hearing by Plaintiff Holguin.  (Id.)  The parties agreed to have Magistrate Judge Christopher Baker preside over the hearing and to proceed without the appearance of Plaintiff Holguin.  No objectors appeared at the hearing.  On this same date, Plaintiffs filed a supplemental declaration in support of their request for litigation costs.  (ECF No. 58.)

Having considered the moving papers, the declarations and exhibits attached thereto, the information presented at the May 29, 2024 hearing, as well as the Court's file, the Court issues the following order granting Plaintiffs' motion for final approval of the class and collective action settlement, and granting in part Plaintiffs' motion for fees and incentive awards.

### B.      Litigation History

On November 22, 2022, the parties agreed to mediation and further agreed to a protocol for an exchange of documents and information before the mediation.  (Decl. of Kane Moon ("Moon Decl.") at ¶ 10, ECF No. 55-1.)  Prior to mediation, Defendant provided to Plaintiffs through discovery voluminous documents and data that was necessary and useful in evaluating the claims and defenses asserted in this action.  (Id.)  Defendant produced written wage and hour policies, exemplar arbitration agreements signed by class members, as well as a sample size of time and payroll records for roughly 20% of the class.  (Id.)

In preparation for mediation, Plaintiffs' counsel reviewed and analyzed all the information provided by Defendant.  (Id. at ¶ 11.)  A statistics expert was retained to analyze the sample records produced and prepare a damage analysis prior to mediation.  (Id.) The expert was able to prepare an analysis with a high degree of certainty based on the size of the sampling of time and wage records.  (Id.)  Plaintiffs' counsel received detailed information from Plaintiffs regarding their work experiences and also interviewed other class members.  (Id.)  In conjunction with their extensive factual investigation, Plaintiffs' counsel also investigated the applicable law regarding the claims and defenses asserted in the litigation.  (Id.)

On November 22, 2022, the parties participated in a full day of private mediation with Steven Rottman, Esq., an experienced and neutral class and PAGA action mediator.   (Id. at ¶ 12.) The negotiations were at arm's length and, although conducted in a professional manner, were

1   adversarial.  (Id.)   The parties entered the mediation willing to explore the potential for a

2   settlement of the dispute, but each side was also prepared to litigate their position through trial and

3   appeal if a settlement had not been reached.  (Id.)

4          After extensive negotiations and discussions regarding the strengths and weaknesses of the

5   claims and Defendant's defenses, a settlement was reached by the parties, the material terms of

6   which are encompassed within the settlement.  (Id.)

7          On December 8, 2023, a notice of settlement and copy of the settlement was submitted to

8   the Labor and Workforce Development Agency ("LWDA") in compliance with California Labor

9   Code section 2699(l)(2).  (Id. at ¶ 14.)  The LWDA has not indicated any intent to investigate or

10   intervene in this action, nor have they objected to the settlement agreement.  (Id. at ¶ 15.)

11          **C.     Relevant Terms of the Settlement Agreement**

12          The material terms of the Joint Stipulation of Amended Class and Representative

13   Settlement ("Settlement Agreement") are as follows:

14          (a) The Settlement Class is defined as "All non-exempt employees of Defendant who

15   worked for Defendant in California during the Class Period, except those who send the Settlement

16   Administrator a timely Request for Exclusion.  (Settlement Agreement at ¶ 4.)  The "Class Period"

17   is March 8, 2018 through June 20, 2023.[3]  (Id. at ¶ 3.)

18          (b)  The Net Settlement Amount is calculated by deducting Plaintiffs' attorney fees,

19   Plaintiffs' reasonable litigation costs, the PAGA Penalty Payment to the LWDA, and the costs of

20   settlement administration from the Gross Settlement Amount.  (Id. at ¶¶ 10, 26(g).)

21          (c)  The Parties agreed that $85,000. from the Gross Settlement Amount will be allocated

22   toward settlement of claims for penalties under PAGA, of which 75% ($63,750.) will be paid to

---

[3] The Escalator Clause provides "The number of Covered Workweeks is estimated to be 219,646.  If it is later
determined that, through the Class Period, the number of actual Covered Workweeks during the Class Period exceeds
10% of the estimated Covered Workweeks (i.e., exceeds 241,611 workweeks), Defendant may elect to
either (a) increase the Gross Settlement Amount by a pro-rata dollar value equal to the number of workweeks in excess
of 241,611 workweeks; or (b) end the Class Period on the date the number of pay periods exceeds 241,611 (the
'Escalator Clause').  The Gross Settlement Amount will not be reduced for any reason."  (Settlement Agreement ¶
26(d).)  Following preliminary approval, the Settlement Administrator determined that the Escalator Clause had been
triggered and Defendant elected to end the Class Period rather than increasing the Gross Settlement Amount.
Therefore, it was determined the class period is March 8, 2018 through June 20, 2023.  (Moon Decl. at ¶ 33;
Declaration of Lesly Rubalcava ("Rubalcava Decl.") at ¶ 14, n.1., ECF No. 55-11.)

the LWDA and 25% ($21,250.) will be paid to PAGA Employees through individual Settlement PAGA Payments on a pro-rata basis based on pay periods worked during the PAGA Period.  (Id. at ¶¶ 11, 26(j).)  The PAGA period is the period is from February 19, 2021 through January 10, 2024.  (Id. at ¶ 12.[4])  PAGA Employees are "All Class Members that worked during the PAGA Period."  (Id. at ¶ 13.)  The PAGA Pay Period is the number of pay periods each PAGA employee worked during the PAGA Period.  (Id. at ¶ 14.)  The Released PAGA Claims are defined as "all claims that have been pled or could have been pled, based upon the factual allegations and issues set forth in the Notice to the LWDA and alleged in the Complaint, including civil penalties under PAGA, fees, and all other claims and allegations made or which could have been made in the Action based on the facts and allegations pled in Plaintiff Maria Bustos Ramirez's notice to the LWDA and the complaint.  (Id. at ¶ 16.)

(d) Defendant has agreed not to oppose certification of a Class for purposes of settlement only.  (Id. at ¶¶ 19, 24.)  Defendant denies any liability or wrongdoing associated with the claims in the complaint and reserves the right to oppose claim or class certification in this or any other action should the settlement not become effective.  (Id. at ¶ 21.)

(e) Defendant has agreed to pay a Gross Settlement Amount of $825,000.  Defendant will be separately responsible for any employer payroll taxes required by law.  The Gross Settlement Amount will be used to pay the Class Representative Service Payments to Plaintiffs, the PAGA Allocation, Settlement Administration Costs, and Class Counsel's Attorneys' Fee and Litigation Costs Awards.  (Id. at ¶ 26(c), (g).)  The amount remaining will be distributed to Settlement Class Members through individual Settlement Class Payments.  (Id. at ¶ 26(i).)  Any uncashed checks remaining after the 180-day void period will be canceled and transmitted to Legal Aid at Work as the *cy pres* beneficiary.  (Id. at ¶ 35.)  No portion of the Gross Settlement Amount will revert to Defendant.  (Id. at ¶ 26(e).)  Settlement Payment checks will have a 180-day void date.  (Id. at ¶ 34.)

(f) No claim form is required from Settlement Class Members and/or PAGA Employees to

---

[4] Due to the triggering of the Escalator Clause, the PAGA period is from February 19, 2021 through January 10, 2024.  (Rubalcava Decl. at ¶ 14, n.1.)

1  receive their settlement payment.  (Id. at ¶ 26(f).)

2      (g) Settlement Class Payments will be paid from the Net Settlement Amount.  Each

3  Settlement Class Member will be paid a pro-rata share of the Net Settlement Amount (less the

4  PAGA Settlement Payments) as calculated by the Settlement Administrator.  The pro rata share

5  will be determined by comparing the individual Settlement Class Members total number of hours

6  worked during the Class Period to the sum number of hours worked by all Settlement Class

7  Members.  (Id. at ¶ 26(i).)

8      (h) PAGA Settlement Payments will be paid from the Net Settlement Amount.  Each

9  PAGA Employee will be paid a pro-rata share of the PAGA Settlement Payment as calculated by

10  the Settlement Administrator.  Class Members will not be permitted to exclude themselves from

11  this portion of the Settlement.  The pro-rata share is determined by comparing the individual

12  PAGA Employee's Pay Periods during the PAGA Period to the total PAGA Pay Periods worked

13  by all PAGA Employees.  (Id. at 26(j).)

14      (i) If a Class Member disputes the accuracy of Defendant's records used to calculate total

15  hours worked in all Covered Workweeks the matter will be referred to the Settlement

16  Administrator.    The Settlement Administrator will review Defendant's records and any

17  information or documents submitted by the Class Member and issue a decision regarding the

18  dispute.  (Id. at ¶ 26(v).)

19      (j) Any Class Member may request to be excluded from the class by mailing a request for

20  exclusion.  No specific wording is required, but the request must clearly and unequivocally state a

21  desire to be excluded from the Class.  (Id. at ¶ 26(w).)  Class Members cannot exclude themselves

22  from the Released PAGA Claims and will nevertheless receive their pro-rata share of the PAGA

23  Settlement Payment.  (Id. at ¶ 26(u).)

24      (k) Tax Allocation: 33 1/3% of all individual Settlement Class Payments shall be

25  considered wages and shall be subject to the withholding of all applicable local, state, and federal

26  taxes, 33 1/3% shall be considered penalties, and 33 1/3% shall be considered interest.  (Id. at ¶

27  26(k).)  The individual Settlement PAGA Payment shares will be entirely allocated to penalties.

28  (Id. at ¶¶ 26(j) (k).)

1   (l) Settlement payments do not give rise to additional benefits to the individual class

2   members.  (Id. at ¶ 26(l).)

3   (m) Defendant will not oppose Class Counsel's application for fees not to exceed 33 1/3%

4   of the Gross Settlement Amount ($275,000.), and actual costs, in an amount not to exceed $30,000,

5   both to be paid out of the Gross Settlement Amount.  If the court approves lesser fees and costs,

6   the difference will be added to the Net Settlement Amount.  (Id. at ¶ 26(m).)

7   (n) Subject to Court's approval, each Plaintiff will be paid a Service Payment of $7,500.

8   for Plaintiffs' time, effort, and exposure to substantial risk in bringing and presenting the action, as

9   well as consideration for their general release of claims, both known and unknown, and waiver of

10   section 1542 rights.  In the event the amount finally approved is less, the difference will revert to

11   Settlement Class Members.  Plaintiff will be releasing all claims, including unknown claims, and

12   are waiving all rights and benefits afforded by Civil Code § 1542.  (Id. at ¶ 26(n).)

13   (o) The Settlement Administrator will be ILYM Group, Inc. The Settlement

14   Administrator's final costs, which include costs for services performed to-date as well as future

15   remaining services following final approval shall not exceed $30,000.  (Id. at ¶ 26(p).)

16   (p) Any Class Member may object to the Settlement prior to the Final Approval Hearing by

17   submitting a written objection, have an attorney object for them, or appear at the Final Approval

18   Hearing.  Any Class Member who does not object prior to or at the Final Approval Hearing is

19   deemed to have waived any objection.  (Id. at ¶ 26(x).)

20   (p) The Settlement will release the following claims for Settlement Class Members (those

21   Class Members who do not timely opt out of the Settlement) for the entire Class Period.

22   [A]ny and all claims stated in the Action, or that could have been stated based on
the facts alleged in the Action, implicitly or explicitly, including but not limited to
23   state wage and hour claims (including all claims under the California Labor Code)
for unpaid wages, minimum wage, overtime, off-the-clock work, meal periods, rest
24   periods, wage statement violations, unreimbursed expenses, interest, penalties, and
attorneys' fees, waiting time penalties, withholding from wages and the related
25   provisions of the Labor Code including but limited to Labor Code §§ 201-204, 210,
216, 218.6, 226, 226.3, 226.7, 510, 512, 558, 1194, 1194.2, 1197, 1197.1, 1198,
26   1198.5, 1199, 2802, derivative claims under California Business & Professions
Code §§ 17200 et seq., 2699, et seq and all claims under the governing Wage
27   Orders ("Released Claims").

28   (Id. at ¶ 37(c).)

7

(q) All PAGA Employees employed during the Released PAGA Claims Period (whether requesting exclusion from the Settlement or not) will release the Released PAGA claims.  (Id. at ¶ 37(d).

**D.      Notice**

After receiving the Court approved text for the notice packet from Plaintiffs' counsel, the settlement administrator prepared a draft which was approved by the parties' counsel and was translated into Spanish prior to mailing.  (Decl. of Lesly Rubalcava ("Rubalcava Decl.") at ¶ 4, ECF No. 55-11.)  On January 23, 2023, the class list was received from Defendant containing the full name, social security number, last known address, and hours worked in all covered work weeks, duration of work weeks, and employment dates for all covered class members.  (Id. at ¶ 5.) The list was uploaded to the database and checked for duplicates and other possible discrepancies. (Id.)  The class list contained 4,673 individuals.  (Id.)

The 4,673 names and addresses were then processed against the National Change of Address database maintained by the United States Postal Service to update and confirm all mailing addresses before mailing the notice packet.  (Id. at ¶ 6; see notice, ECF No. 55-2 at 35-41.) Updated addresses were used for mailing the notice packet.  (Id.)  If no updated address was found the original address provided by Defendant was used for mailing.  (Id.)

The notice packet was mailed on February 6, 2024, via First Class Mail, to all 4,673 individuals on the class list.  (Id. at ¶ 7.)  Of the packets mailed, 299 were returned as undeliverable.  (Id. at ¶ 8.)  One was returned with a forwarding address and was promptly remailed to the forwarding address.  (Id.)  A computerized skip trace was performed on the remaining 298 packets that did not contain a forwarding address.  (Id.)  As a result, 197 updated addresses were obtained, and the notice packets were promptly remailed to the class members. (Id.)  As of April 30, 2024, 101 notice packets have been deemed undeliverable with no updated address being found.  (Id. at ¶ 10.)  The deadline to request exclusion from the settlement was April 8, 2024, and four class members have returned requests for exclusion from the settlement. (Id. at ¶ 11.)  No objections have been received.  (Id. at ¶ 12.)

///

One class member disputed the reported work hours; after review it was determined that the reported hours were correct.  (Id. at ¶ 13.)

### III.

### LEGAL STANDARD

Class actions require the approval of the district court prior to settlement.  Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.").  The Ninth Circuit has repeatedly affirmed that a strong judicial policy favors settlement of class actions.  Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015).  Nevertheless, courts have long recognized that the settlement of class actions presents unique due process concerns for the absent class members.  Allen, 787 F.3d at 1223; In re Bluetooth Headset Products Liability Litigation ("In re Bluetooth"), 654 F.3d 935, 946 (9th Cir. 2011).  Thus, "the district court has a fiduciary duty to look after the interests of the absent class members."  Allen, 787 F.3d at 1223.

Review of the proposed settlement of the parties generally proceeds in two phases.  True v. American Honda Motor Co., 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010).  At the preliminary approval stage, the court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members.  True, 749 F.Supp.2d at 1063.  "[I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing."  In re Tableware Antitrust Litigation, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be approved "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

> **(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

> **(i)** the costs, risks, and delay of trial and appeal;

> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

> **(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. True, 749 F.Supp.2d at 1063. The primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." Lane v. Facebook, Inc., 696 F.3d 811, 818 (9th Cir. 2012) (citing Fed. R. Civ. P. 23(e); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026–27 (9th Cir. 1998)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon, 150 F.3d at 1026 (citing Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)); see also Lane, 696 F.3d at 818–19. In determining whether a settlement is fair, reasonable, and adequate, district courts are to consider several factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003) (citations omitted); Hanlon, 150 F.3d at 1026.

When the settlement takes place before formal class certification, as it has in this instance, settlement approval requires a "higher standard of fairness." Lane, 696 F.3d at 819 (quoting

_Hanlon_, 150 F.3d at 1026).  This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent."  _Id_.  As recently emphasized by the Ninth Circuit, this requires courts to apply "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)."  _Roes, 1-2 v. SFBSC Mgmt., LLC ("Roes")_, 944 F.3d 1035, 1043 (9th Cir. 2019) (quoting _In re Bluetooth_, 654 F.3d at 946).  When reviewing a district court's final approval of a settlement negotiated prior to certification, the Ninth Circuit ensures the district court: (1) comprehensively explored all factors; (2) has given a reasoned response to all non-frivolous objections; (3) adequately developed the record to support its final approval decision; and (4) "looked for and scrutinized any subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations."  _Roes_, 944 F.3d at 1043 (quoting _Allen_, 787 F.3d at 1223).

Having already completed a preliminary examination of the settlement agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits.  _See_ e.g., _In re Syncor ERISA Litig._, 516 F.3d 1095, 1101 (9th Cir. 2008); _Churchill Vill., L.L.C. v. Gen. Elec._, 361 F.3d 566, 576 (9th Cir. 2004).  Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [they are] exposed to the litigants and their strategies, positions, and proof."  _Staton_, 327 F.3d at 953 (quoting _Hanlon_, 150 F.3d at 1026).

## IV.

## DISCUSSION

Plaintiffs move for a final order approving the Amended Settlement Agreement and are seeking (1) Certifying a Class, for settlement purposes only; (2) Approving the Settlement as fair, reasonable, and adequate as to Class Members under Rule 23(e) of the Federal Rules of Civil Procedure, including the gross amount of the settlement; (3) Finding Class Members were given, in a reasonable manner under the circumstances, due and adequate notice of the proposed Settlement and advised of their right to participate in, object to, or exclude themselves from the

Settlement; (4) Directing consummation of the terms and provisions of the Settlement in accordance with a Final Approval Order and Judgment; (5) Finally appointing Plaintiffs as the Class Representatives, for settlement purposes only, and approving an enhancement award in the amount of $7,500. to both of them, in recognition for their service and general release of claims; (6) Finally appointing Plaintiffs' Counsel Moon Law Group, PC; Melmed Law Group P.C.; and Bokhour Law Group, P.C. as Class Counsel, for settlement purposes only, and approving an award of $275,000. for attorneys' fees and $19,610.36 for reimbursement of litigation costs actually incurred; (7) Confirming the appointment of ILYM Group, Inc. as the Settlement Administrator, finding the Administrator fulfilled its initial notice and reporting duties under the Settlement, and approving an award of $30,000. for administration services; (8) Approving payment of $63,750. to the LWDA and $21,250. to the PAGA Employees in settlement and release of claims for civil penalties under PAGA, and barring further claims for the Released PAGA Claims notwithstanding the submission of any Request for Exclusion from the Settlement; (9) Finally approving Legal Aid at Work as the *cy pres* beneficiary of any uncashed checks; (10) Directing the Clerk of the Court to enter the Final Approval Order and Judgment as a final Judgment; (11) Directing the Administrator to provide notice of Judgment to Class Members by posting an electronic copy online for no less than ninety (90) calendar days following entry thereof; and (12) Without affecting the finality of the Judgment, reserving continued jurisdiction over the Parties solely for purposes of enforcing the Settlement and/or Judgment, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as are permitted by law. (Plaintiffs' Motion for Final Approval of Class and Representative Action Settlement ("Mot.") at 3-4, ECF No. 55.)

### A.     Final Approval of the Class Action Settlement

At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. True, 749 F.Supp.2d at 1063. The executed settlement agreement in this action is attached as an exhibit to the instant motion. (ECF No. 55-2.) The Settlement Agreement will provide monetary payments to 4,602 Settlement Class Members, which consists of all non-exempt

employees who worked for Defendant in California during the period from March 8, 2018 through June 20, 2023. (Mot. at 11.)

Following preliminary approval of the Class Action Settlement, the Class Notice was translated into Spanish and delivered by first-class mail to Class Members. (Mot. 11; Rubalcava Decl. at ¶ 7.) Only four Class Members have requested to be excluded from the Settlement and class members were given the opportunity to object and there have been no objections received by any Class Member or the LWDA. (Mot. at 11; Rubalcava Decl. at ¶¶ 11, 12.) The Court now turns to the adequacy of notice, certification of the class on final approval, and review of the settlement following the final fairness hearing.

      1.    <u>Adequate Notice to the Class</u>

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); <u>see also</u> <u>Hanlon</u>, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). For a "class certified under Rule 23(b)(3)— or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)— the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." <u>Id.</u> The "notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." <u>Id.</u> at (c)(2)(B)(i)-(vii).

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." <u>Churchill Vill., LLC</u>, 361 F.3d at 575 (internal quotations and citations

1  omitted).  Any notice of the settlement sent to the class should alert class members of "the
2  opportunity to opt-out and individually pursue any state law remedies that might provide a better
3  opportunity for recovery."  Hanlon, 150 F.3d at 1025.  It is important for class notice to include
4  information concerning the attorneys' fees to be awarded from the settlement because it serves as
5  "adequate notice of class counsel's interest in the settlement."  Staton, 327 F.3d at 963 n.15
6  (Where the class was informed of the amount of fees only indirectly and where the failure to give
7  more explicit notice could itself be the result of counsel's self-interest, the courts must be all the
8  more vigilant in protecting the interests of class members with regard to the fee award.") (quoting
9  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)).

10      Here, at preliminary approval, the Court found the proposed form of notice to be
11  satisfactory.  (Order Granting Preliminary Approval at 45-50, ECF No. 54.)  While expressing a
12  concern of whether the proposed method of notice (a single notice sent by United States mail) was
13  sufficient, the Court ultimately found that the initial check for updated addresses with the national
14  database, remailing any notice packets that were returned as undeliverable after a further database
15  check for updated addresses appeared to be the "best notice that is practicable under the
16  circumstances" and met the requirements of Federal Civil Procedure Rule 23(c)(2)(B).  (Order
17  Granting Preliminary Approval at 50.)

18      The Court has reviewed the notice provided to the class members and finds that it contains
19  all the information required by Rule 23(c)(3).  The class members are provided information on
20  what the case is about, including the claims alleged and the damages sought, and that Defendant
21  denies all liability.  (Notice at 3, ECF No. 55-12.)  The notice includes the class definition.  (Id. at
22  2.)  The class members are informed of how to object to the settlement, including that they may
23  enter an appearance through an attorney, how to be excluded from the settlement, and that any
24  request to be excluded must be signed and postmarked on or before April 8, 2024.  (Id. at 1, 6.)
25  The notice identifies the claims that will be released by the settlement class members.  (Id. at 5.)
26  The notice also informs the class that counsel will ask the court to award fees of up to $275,000.
27  (Id. at 5.)

28  ///

14

The Court does find a typographical error at page 6 in the section entitled "how can I get additional information?"  (Notice at 40, Spanish Notice at 14.)  After stating that the class notice is a summary of the settlement, it states the following.

> More details are in the Joint Stipulation of Amended Class and Representative Action Settlement attached to the Declaration of Kane Moon in Support of Plaintiff's Motion for Preliminary Approval.  The Joint Stipulation of Amended Class and Representative Action Settlement and all other records relating to the lawsuit are available for inspection and/or copying through the Court's Public Access to Court Electronic Records (PACER) system at **https://ecf.cacd.uscourts.gov** or at the Clerk's Office of the United States District Court.  If you choose to access documents online, the Court will charge you a fee for access.  Class Counsel can provide you with copies of the settlement documents at no charge.  Any motion for an award of attorneys' fees filed by Class Counsel will also be available through those methods.

(Id. at 40-41 (emphasis added.))   The website address for the PACER system is for the Central District of California, yet this action is proceeding in the Eastern District of California.

The Court has located a small number of cases that have encountered similar but not identical issues.   In Nieberding, just prior to the final approval hearing the court found a typographical error that gave the wrong address for the final approval hearing in the notice provided to the class and on the settlement's website.  Nieberding v. Barrette Outdoor Living, Inc., 129 F.Supp.3d 1236, 1247 (D. Kan. 2015).   The court found that the incorrect address did not render the notice insufficient.   Nieberding, 129 F.Supp.3d at 1247.   The notice contained the requirements of R. Civ. P. 23(c)(2)(B) and objectors were to submit a written objection prior to the hearing and no objections had been filed.  Id.

> In addition, the Court finds that the error is a slight one. The incorrect address listed on the notice and the settlement website is just three blocks from the courthouse. No building exists at 777 S.E. Quincy, and any confused class member could have discerned the address for the courthouse after minimal inquiry. To the extent any class member was confused by the incorrect address, that person could have called the toll-free number listed on the notice or contacted the claims administrator, any of the counsel listed in the notice, or even the Court to confirm the location of the final approval hearing. See Arnett v. Bank of Am., N.A., No. 3:11–cv–1372–SI, 2014 WL 4672458, at *3 n. 7 (D.Or. Sept. 18, 2014) (concluding that a typographical error in the class notice stating that the hearing date was Friday, September 9, 2014, instead of Tuesday, September 9, 2014, "did not render the Class Notice insufficient because any Class Member who may have been confused about the date of the hearing could confirm the date by calling the toll-free number, visiting the settlement website, or contacting the Court.").

> In sum, the Court finds that this error does not materially reduce the quality of the notice received by the class members and does not warrant the cost of an additional

round of notice to the class members. See In re Processed Egg Prods. Antitrust Litig., 284 F.R.D. 278, 295 n. 16 (E.D.Pa.2012) (holding that an inadvertent typo listing the end date for the class period did not render the notice insufficient because it would not have prevented putative class members from failing to understand the terms of the settlement agreement or from opting out or objecting to the agreement). The Court thus concludes that the notice provided to the class satisfied the requirements of Rule 23 and due process.

Nieberding, 129 F.Supp.3d at 1248.

Here, as in Nieberding, the notice contains the requirements of Rule 23(c)(2)(B)(i)-(vii) and the error in the PACER website does not implicate any of the information required to be provided by Rule 23(c)(3).  Nor does the incorrect information in the notice implicate the final hearing or the ability to object to the settlement.  Rather, the class members were directed to the incorrect district court's PACER website if they wished to view records relating to the lawsuit or settlement.

However, the notice also advises that the records can be obtained through the Office of the Clerk and the address for the courthouse is included in the section directly above addressing the final approval hearing.  "The Court will hold a Final Approval Hearing regarding the fairness, reasonableness, and adequacy of the proposed Settlement, the plan of distribution, Class Counsel's Fees and Expenses, the Class Representative Service Payment, the Administration Costs, and the PAGA Allocation . . . in Courtroom 9 of the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, CA 93721."  (Notice at 40.)  Further, the notice provides that copies of the settlement documents can be provided at no charge by class counsel.  (Id.)  See Arnett, 2014 WL 4672458, at *3 n.7 ("The Court notes that there was a typographical error in the Class Notice, which identified the date of the hearing as 'Friday,' September 9, 2014, instead of 'Tuesday,' September 9, 2014. This typographical error did not render the Class Notice insufficient because any Class Member who may have been confused about the date of the hearing could confirm the date by calling the toll-free number, visiting the settlement website, or contacting the Court."); T.K. Through Leshore v. Bytedance Tech. Co., No. 19-CV-7915, 2022 WL 888943, at *21 (N.D. Ill. Mar. 25, 2022) ("This failure to comply with the letter of Rule 6 does not render notice inadequate.  The Court required that members of the Proposed Settlement Class receive an additional forty-five days to object or opt-out, and they did.  The error identified by Mark S. did

not compromise class members' due process rights or their rights within the meaning of Rule 23 and does not warrant additional notice or denial of the motion for final approval."); Nieberding, 129 F.Supp.3d at 1247.  The Court finds that the error identified is not material and does not render the notice insufficient.

The Court summarized the administration process above.  Here, 4,673 notice packets were mailed to class members on February 6, 2024, and of those returned undeliverable, a skip trace was performed, and ultimately, 197 notice packets remained undeliverable.  (Rubalcava Decl. at ¶¶ 7-10.)  Based on the facts presented by the settlement administrator, as of April 30, 2024, it appears that approximately 2% of the notice packets were returned as undeliverable, if you consider the initial 4,673 notice packets mailed, and the 101 identified as returned from that initial mailing.  (Id. at ¶¶ 7, 10.)

The Court finds that sufficient notice has been provided.  See Silber v. Mabon, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (courts need not ensure all class members receive actual notice, only that "best practicable notice" is given); Winans v. Emeritus Corp., No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice.").

### 2. Certification of Class, Representatives, and Counsel

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met.  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013).  Under Rule 23(a), the four requirements that must be met for class certification are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims for defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(1)-(4); Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 471 (E.D. Cal. 2009).  These four requirements are referred to as "numerosity, commonality, typicality and adequacy of representation."  Evon v. Law Offices of Sidney Mickell,

1   688 F.3d 1015, 1028 (9th Cir. 2012); Bias v. Wells Fargo & Co., 312 F.R.D. 528, 534 (N.D. Cal.

2   2015).  The Court previously addressed the Rule 23(a) requirements and found that they were met

3   on preliminary approval of the class action settlement.  (Order Granting Preliminary Approval at

4   13-19.)  As of April 30, 2024, the Settlement Administrator had not received any objections to the

5   settlement, had received four (4) requests for exclusion, and had received one (1) dispute

6   concerning work hours.  (Rubalcava Decl. at ¶¶ 11-13.)  The Court is unaware of any changes that

7   would affect the class certification findings.

8          **a.     Numerosity**

9          Numerosity is met if "the class is so numerous that joinder of all members is

10  impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no absolute number or cut-off for determining

11  numerosity, and the specific facts of each case may be examined.  Schwarm v. Craighead, 233

12  F.R.D. 655, 660 (E.D. Cal. 2006); Cervantez v. Celestica Corp., 253 F.R.D. 562, 569 (C.D. Cal.

13  2008).  "A reasonable estimate of the number of purported class members satisfies the numerosity

14  requirement of Rule 23(a)(1)."  In re Badger Mountain Irr. Dist. Sec. Litig., 143 F.R.D. 693, 696

15  (W.D. Wash. 1992); see also Cervantez, 253 F.R.D. at 569 ("Courts have not required evidence of

16  specific class size or identity of class members to satisfy the requirements of Rule 23(a)(1).").

17         Upon receiving the class data file, the settlement administrator determined that there were

18  4,602 class members.  (Rubalcava Decl. at ¶ 14.)  The Court finds the proposed class of 4,602

19  members satisfies the numerosity requirement as joinder of such members is impracticable.  See

20  Celano v. Marriott Int'l, Inc., 242 F.R.D. 544, 549 (N.D. Cal. 2007) (noting "courts generally find that

21  the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not

22  been satisfied when the class comprises 21 or fewer.");  Cervantez, 253 F.R.D. at 569 ("Courts have

23  held that numerosity is satisfied when there are as few as 39 potential class members.").

24         **b.     Commonality**

25         Commonality is satisfied where "there are questions of law or fact common to the class."

26  Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has stated that Rule 23(a)(2) is construed permissively

27  and that "[a]ll questions of fact and law need not be common to satisfy the rule."  Staton, 313 F.3d

28  at 462 (quoting Hanlon, 150 F.3d at 1019).  Indeed, "[t]he existence of shared legal issues with

divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. "[T]he key inquiry is not whether the plaintiffs have raised common questions," but "whether class treatment will 'generate common answers apt to drive the resolution of the litigation.' " Arredondo v. Delano Farms Co., 301 F.R.D. 493, 503 (E.D. Cal. Feb. 21, 2014) (citations omitted).  Commonality is not required for all of the claims.  It may sufficient if there is one single issue common to the proposed class.  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359 (2011) (stating that even a single common question will satisfy Rule 23(a)(2)); True, 749 F.Supp.2d at 1064; Haley v. Medtronic, Inc., 169 F.R.D. 643, 648 (C.D. Cal. 1996) ("Indeed, for the commonality requirement to be met, there must only be one single issue common to the proposed class."); see also In re Paxil Litig., 212 F.R.D. 539, 549 (C.D. Cal. 2003) (noting that "the commonality requirement is interpreted to require very little").

Plaintiffs contend that all class members shave a common interest in determining whether Defendant violated wage and hour requirements under state law, including,

> i) whether Defendant paid proper wages to the Class; (ii) whether Defendant provided meal periods to the Class; (iii) whether Defendant provided rest periods to the Class; (iv) whether Defendant paid compensation timely upon separation of employment to former Class Members, and whether waiting-time penalties are available to the Class for violation of California Labor Code § 203; (v) whether Defendant paid compensation timely throughout Class Members' employment; (vi) whether Defendant provided accurate itemized wage statements to the Class; (vii) whether wage statement penalties are available to the Class for violation of California Labor Code § 226; (viii) whether Defendant reimbursed the Class for necessary business expenses; (ix) whether Defendant engaged in unlawful or unfair business practices affecting the Class in violation of California Business and Professions Code §§ 17200–17208; and (x) whether the Class is entitled to penalties pursuant to PAGA.

(Mot. at 19, Moon Decl. at ¶ 36.)

Given the permissive standard for commonality, the Court concludes the facts and legal issues underlying the action are sufficiently similar for the class members, and that Plaintiffs have demonstrated commonality as they have sufficiently shown that they suffered common injuries that are capable of resolution on a class-wide basis. See Wal-Mart Stores, Inc., 564 U.S. at 350; Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 612 (E.D. Cal. 2015).

///

///

1          **c.      Typicality**

2          Rule 23 also requires that "the claims or defenses of the representative parties are typical of

3   the claims or defenses of the class."   Fed. R. Civ. P. 23(a)(3).   Under the rule's permissive

4   standard, claims "need not be substantially identical," but are typical if the representative's claims

5   are "reasonably co-extensive with those of the absent class members."   Parsons v. Ryan, 754 F.3d

6   657, 685 (9th Cir. 2014) (quoting Hanlon, 150 F.3d at 1020).   Typicality is based on the "nature of

7   the claim or defense of the class representative, and not to the specific facts from which it arose or

8   the relief sought."   Parsons, 754 F.3d at 685 (quoting Hanon v. Dataproducts, 976 F.2d at 508).

9   Typicality tests "whether other members have the same or similar injury, whether the action is

10   based on conduct which is not unique to the named plaintiffs, and whether other class members

11   have been injured by the same course of conduct."   Id.   The requirements of commonality and

12   typicality occasionally merge, and "[b]oth serve as guideposts for determining whether under the

13   particular circumstances maintenance of a class action is economical and whether the named

14   plaintiff's claim and the class claims are so interrelated that the interests of the class members will

15   be fairly and adequately protected in their absence."   Parsons, 754 F.3d at 685 (quoting Wal-Mart

16   Stores, Inc., 564 U.S. at 349 n.5).

17          Plaintiffs argues that they raise the same claims as the putative class members and have

18   alleged no individual claims in this action.   Further, Plaintiffs contend that counsel has reviewed

19   the discovery provided and determined that for the purposes of the claims raised, Defendant's

20   policies and practices are either identical to, or sufficiently similar, to raise the same questions of

21   liability and apply to all class members.  (Mot. 21.)

22          Plaintiffs both allege that, due to Defendant's policies, they were not always provided with

23   meal periods and rest breaks, not reimbursed for use of their personal cell phones for work

24   purposes and were not paid for all hours worked for Defendant.   Given the permissive standard,

25   the Court finds that Plaintiffs have demonstrated that their claims are typical to the class.   See

26   Millan, 310 F.R.D. at 605 (finding typicality satisfied based on the presence of at least one shared

27   claim, the failure to pay overtime claim, and noting "[a]lthough potentially different in extent and

28   frequency from the putative class members, Plaintiff appears to have suffered the same injury—

1  under payment for overtime—as the putative class.").

2      **d.    Adequacy of Representation**

3      The Court must ensure "the representative parties will fairly and adequately protect the

4  interests of the class." Fed. R. Civ. P. 23(a)(4).  In determining whether the named plaintiffs will

5  adequately represent the class, the courts must resolve two questions: "(1) do the named plaintiffs

6  and their counsel have any conflicts of interest with other class members and (2) will the named

7  plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Ellis v. Costco

8  Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (quoting Hanlon, 150 F.3d at 1020).

9  "Adequate representation depends on, among other factors, an absence of antagonism between

10  representatives and absentees, and a sharing of interest between representatives and absentees."

11  Ellis, 657 F.3d at 985 (citing Molski v. Gleich, 318 F.3d 937, 955 (9th Cir.2003)).  Class

12  representatives "must be part of the class and possess the same interest and suffer the same injury

13  as the class members." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 626 (1997) (internal

14  quotations and citations omitted).  This factor also tends to merge with the commonality and

15  typicality criteria of Rule 23. Amchem Prod. Inc., 521 U.S. at 626 n.20.

16      Plaintiffs argue there are no conflicts of interest between themselves and class members,

17  and they have both shown and expressed their willingness to represent class members. (Mot. 21,

18  Ramirez Decl. ¶¶ 9-14; Holguin Decl. ¶¶ 9-14.) Plaintiffs argue the similarity of the claims

19  asserted and remedies sought by class members and Plaintiffs do not suggest any divergent

20  interests held by Plaintiffs, and that Defendant did not assert unique defenses against Plaintiffs that

21  it could not assert against any other class member.  Finally, Plaintiffs also contend there are no

22  conflicts with Plaintiffs' counsel, and that counsel have substantial class action experience and can

23  adequately represent the class, having been appointed class counsel in many wage and hour class

24  actions against major employers.  (Mot. at 21, Moon Decl. ¶¶ 38-57; Decl. of Jonathan Melmed.

25  ("Melmed Decl.") ¶¶ 2, 5-9, ECF No. 55-7; Decl. of Mehrdad Bokhour ("Mehrdad Decl.") ¶¶ 2, 6-

26  11, ECF No. 55-9.)

27      In accord with the findings regarding commonality and typicality discussed above, the

28  Court finds Plaintiffs share common injuries and possess the same interest as the unnamed class

1  members.   Plaintiffs do not have any discernible interests that are antagonistic to the class.

2  Further, based on review of the submitted declarations, the Court finds Plaintiffs' counsel have

3  demonstrated that they have sufficient experience handling employment class action and complex

4  wage-and-hour litigation.   Accordingly, the Court finds that Plaintiffs and their counsel have

5  demonstrated they will adequately and fairly protect the interests of the class. Fed. R. Civ. P.

6  23(a)(4).

7          **e.      Rule 23(b) Criteria**

8          Plaintiffs must also meet one of the three subdivisions of Rule 23(b) to certify the class.

9  Fed. R. Civ. P. 23(b).  Plaintiffs argue the proposed class meets the requirements of Rule 23(b)(3).

10  Under Rule 23(b)(3) a class action may proceed where "the court finds that the questions of law or

11  fact common to class members predominate over any questions affecting only individual members,

12  and that a class action is superior to other available methods for fairly and efficiently adjudicating

13  the controversy." Fed. R. Civ. P. 23(b)(3).  Matters pertinent to this determination include: "(A)

14  the class members' interests in individually controlling the prosecution or defense of separate

15  actions; (B) the extent and nature of any litigation concerning the controversy already begun by or

16  against class members; (C) the desirability or undesirability of concentrating the litigation of the

17  claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R.

18  Civ. P. 23(b)(3)(A)-(D).   The fact that the parties have reached a settlement is relevant to

19  consideration of these factors and when "[c]onfronted with a request for settlement-only class

20  certification, a district court need not inquire whether the case, if tried, would present intractable

21  management problems [under Rule 23(b)(3)(D)], for the proposal is that there be no trial."

22  Amchem Prod., Inc., 521 U.S. at 620.  However, "other specifications of the Rule—those designed

23  to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted,

24  even heightened, attention in the settlement context."  Id.

25          Plaintiffs argue that the common issues predominate over individual issues in this action,

26  such as (1) whether Defendant uniformly failed to provide class members with legally compliant

27  meal periods and rest breaks; (2) whether Defendant required or permitted employees to work off

28  the clock; (3) whether Defendant provided putative class members with itemized wage statements

1  that were inaccurate in violation of Labor Code § 226; and (4) whether Defendant failed to pay all

2  overtime wages due and payable to former employees within the times specified under the

3  California Labor Code.  (Mot. at 20.)  Plaintiffs further contends that since the class members

4  would have to prove the same issues of law and facts to prevail, and because their legal remedies

5  are identical, it is preferable to resolve all the class member claims by means of settlement rather

6  than to have each class member litigate their own individual claims.  (Id.)

7        Plaintiffs also argue that a class action is superior here, as it is the only method by which

8  the class members can pool their claims which would be uneconomical to litigate individually.

9  Plaintiffs assert it would be difficult to believe any class member would have an interest in

10  individually controlling the prosecution of separate actions given the relatively small sums

11  involved for any individual class member.  (Mot. at 22.)  Further class members had the

12  opportunity to exclude themselves from the settlement, and it is desirable to concentrate the issues

13  in this forum.  Finally, Plaintiffs contend that the settlement allows all individuals to resolve

14  similar claims against Defendant through a process that does not even require them to file a claim

15  form.  (Id.)

16        i.    Predominance

17        The predominance requirement under Rule 23(b) is "far more demanding" than the

18  commonality requirement of Rule 23(a).  McKenzie v. Fed. Exp. Corp., 275 F.R.D. 290, 299 (C.D.

19  Cal. 2011); United States ex rel. Terry v. Wasatch Advantage Grp., LLC ("Terry"), 327 F.R.D.

20  395, 405 (E.D. Cal. 2018).  "Implicit in the satisfaction of the predominance test is the notion that

21  the adjudication of common issues will help achieve judicial economy."  Zinser v. Accufix Rsch.

22  Inst., Inc., 253 F.3d 1180, 1189 (9th Cir.), opinion amended on denial of reh'g, 273 F.3d 1266 (9th

23  Cir. 2001) (quoting Valentino v. Carter–Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir.1996)).

24        Here, common questions exist such as: whether Defendant uniformly failed to provide rest

25  periods and meal breaks; whether Defendant required or permitted employees to work off the

26  clock; whether Defendant provided class members with itemized wage statements that were

27  inaccurate in violation of Labor Code § 226; and whether Defendant failed to pay all overtime

28  wages due and payable?  (Mot. at 20.)  Plaintiffs argue that class members would have to prove

the same issues of law and fact to prevail, and their legal remedies are identical.  (Id.)

The claims here derive from Defendants' alleged policies that required employees to work without compensation, meal and rest period and reimbursement of expenses.  The Court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members.

ii.   Superiority

The Court considers "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A)-(D).  A class action is the superior method of litigating where no realistic alternative exists.  Wright, 259 F.R.D. at 473.  The Ninth Circuit has recognized that a class action is a plaintiff's only realistic method for recovery if there are multiple claims against the same defendant for relatively small sums.  Id., at 474.

1)   Class members' interests in individually controlling the prosecution

Rule 23(b) directs the Court to consider "the class members' interests in individually controlling the prosecution or defense of separate actions."  Fed R. Civ. P. 23(b)(3)(A).  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . ..  A class action solves this problem by aggregating the relatively paltry potential recoveries. . .."  Terry, 327 F.R.D. at 418 (quoting Amchem, 521 U.S. at 617).  "Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action."  Zinser, 253 F.3d at 1190.

Here, the average payment to the individual class member is estimated to be $87.  (Rubalcava Decl. at ¶ 15.)  Given the relatively small recovery for the individual class members it would be unlikely that individual class members have a particular interest in controlling the litigation.  Further, the class members were provided with the ability to exclude themselves from the settlement.  Only 4 of the over 4,000 class members sought to be excluded from the class.  (Id.

1   at ¶ 11.)  The Court finds the relatively small recoverable individual sums and few requests for

2   exclusion from the class weigh in favor of finding the "class action is superior to other available

3   methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); Las

4   Vegas Sands, 244 F.3d at 1163.

5          2)      Other litigation

6          Next, the Court considers "the extent and nature of any litigation concerning the

7   controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). This factor

8   serves "the purpose of assuring judicial economy and reducing the possibility of multiple

9   lawsuits."  Zinser, 253 F.3d at 1191 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary

10  Kay Kane, Federal Practice and Procedure § 1780 at 568–70 (2d ed.1986)).

11         The settlement here resolves the litigation of both actions commenced against Defendant

12  and the parties have not identified any other remaining actions that are not encompassed in the

13  settlement agreement.   This factor weighs in favor of granting certification.

14         3)      Concentration in this forum

15         Third, the Court must consider "the desirability or undesirability of concentrating the

16  litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C).  The action here is a

17  wage and hour challenge under California law and the class members are hourly employees

18  employed in California.  See Terry, 327 F.R.D. at 419 (finding the factor weighed in favor of

19  certification where the class members were located in California and involved "California state

20  law claims").  Also, as the parties have already agreed on a proposed Settlement Agreement, "the

21  desirability of concentrating the litigation in one forum is obvious."  Wright, 259 F.R.D. at 474

22  (quoting Elkins v. Equitable Life Ins. Co. of Iowa, No. 96–296–CIV–T–MB, 1998 U.S. Dist.

23  Lexis 1557, at *60 (M.D. Fla. Jan. 27, 1998)).  The Court find that this factor weighs in favor of

24  granting certification.

25         4)      Management of the action

26         Finally, the Court must consider "the likely difficulties in managing a class action."  Fed.

27  R. Civ. P. 23(b)(3)(D).  The Court need not weigh potential difficulties in managing the class

28  action given the parties have reached settlement.  Amchem Prod., 521 U.S. at 620; Wright, 259

1  F.R.D. at 474.

2  **f.   Conclusion**

3  Based upon the prior findings in the order granting preliminary certification, and

4  considering the information provided in the instant motion, the Court finds the settlement class

5  satisfies the requirements of Rule 23(a) and Rule 23(b)(3).  Accordingly, final certification of the

6  settlement class is granted.

7  **B.   Final Fairness Hearing and Whether Settlement Agreement is Fair, Adequate, and Reasonable**

8

9  On May 29, 2024, the court held a final fairness hearing.  No class members or objectors

10  appeared at the hearing.  For the reasons explained below, the Court now determines that the

11  settlement reached in this case is fair, adequate, and reasonable.  See Fed. R. Civ. P. 23(e)(2).

12  As stated above, in assessing the fairness of a class action settlement, courts balance the

13  following factors:

14  (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
    duration of further litigation; (3) the risk of maintaining class action status
15  throughout the trial; (4) the amount offered in settlement; (5) the extent of
    discovery completed and the stage of the proceedings; (6) the experience and
16  views of counsel; (7) the presence of a governmental participant; and (8) the
    reaction of the class members to the proposed settlement.
17

18  Churchill Vill., L.L.C., 361 F.3d at 575; see also In re Online DVD-Rental Antitrust Litig., 779

19  F.3d 934, 944 (9th Cir. 2015); Rodriguez v. West Publ'g Corp., 563 F.3d 948, 964–67 (9th Cir.

20  2009).  Further, where the parties have reached a settlement agreement prior to class certification,

21  the Court has an independent duty to be vigilant for any sign of collusion among the negotiating

22  parties.  See In re Bluetooth, 654 F.3d at 946.

23  The Court now turns to consideration of each of these eight factors, before additionally

24  considering whether the pre-certification settlement shows signs of collusion rendering the

25  settlement unfair.  The Court notes that, as at preliminary approval of the settlement, Plaintiffs

26  proffer that where a settlement results from arms-length negotiations following relevant discovery,

27  there is a presumption that the agreement is fair.  (Mot. at 24-25; see Linney v. Cellular Alaska

28  Partnership, 1997 WL 450064, *5 (N.D. Cal. 1997); In re Immune Response Secs. Litig., 497

F.Supp.2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).)  However, this Court already rejected this contention in the order granting preliminary approval.  (Order Granting Preliminary Approval at 23-24.)    The Ninth Circuit has recently emphasized that this is not a valid presumption, particularly where settlement is negotiated prior to class certification:

> Nowhere in the final approval order, however, did the district court cite or otherwise acknowledge our longstanding precedent requiring a heightened fairness inquiry prior to class certification.  To the contrary, the district court declared that, "[w]here a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a *presumption that the settlement is fair and reasonable*."  (Emphasis added.)  But such a presumption of fairness is not supported by our precedent, and the district court cites no Ninth Circuit case which adopted this standard.  Particularly in light of the fact that we not only have never endorsed applying a broad presumption of fairness, but have actually required that courts do the opposite—by employing extra caution and more rigorous scrutiny—when it comes to settlements negotiated prior to class certification, the district court's declaration that a presumption of fairness applied was erroneous, a misstatement of the applicable legal standard which governs analysis of the fairness of the settlement.

Roes, 944 F.3d at 1049.  Thus, the Court's review does not begin with a presumption of fairness based on apparent arms-length negotiations.  Nonetheless, the Court recognizes it as a factor in determining whether the proposed settlement is fair, reasonable, and adequate.  See Rodriguez, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

   1. Strength of Plaintiffs' Case

  "An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement."  Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc. ("DIRECTV"), 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 5 Moore Federal Practice, § 23.85[2][b] (Matthew Bender 3d. ed.)).  A court's role is not to reach any ultimate conclusion on the facts or law which underly the merits of the dispute, as the very uncertainty of the outcome and the avoidance of expensive and wasteful litigation is what induces consensual settlements.  Officers for Justice, 688 F.2d at 625.  The court cannot reach such a conclusion because evidence has not been fully presented.  In re Wash. Pub. Power Supply Sys. Sec. Litig., 720 F.Supp. 1379, 1388 (D. Ariz. 1989).  Instead, a court

"evaluate[s] objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." Id.   In reality, the reasonable range of settlement is arrived at by considering the likelihood of a verdict for the plaintiff or defendant, "the potential recovery, and the chances of obtaining it, discounted to a present value." Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 255 (N.D. Cal. 2015) (quoting Rodriguez, 563 F.3d at 965).

The briefing before the Court does not provide overly extensive or specific details concerning the strengths or weaknesses of the merits of the principal claims.  Plaintiffs generally proffer that the parties entered into mediation willing to explore settlement but were also prepared to litigate their position through trial and appeal.  Plaintiffs proffer that while they are confident in the merits of their claims, a legitimate controversy exists as to each cause of action.  Plaintiffs recognize that proving the amount owed to each class member would be expensive, time-consuming, and uncertain.  There is also the possibility that because the issues are fairly contested the court may not award PAGA penalties even if Plaintiffs prevailed on the merits due to the largely discretionary nature of PAGA penalties.  (Mot. at 28.)

The Court previously weighed the parties' course of negotiation in relation to the merits of the action; the risk, complexity and likely duration of further litigation; and amount of settlement and incorporates such discussion herein.  (Order Granting Preliminary Approval at 23-32.)   At preliminary approval, the Court did find the proposed recovery fell with the range of possible approval with the "caveat that more extensive explanation and support for the discounting from the original valuations may be needed for final approval, given the proffered strengths and weaknesses of the claims and defenses, the costs and risks of pursuing this litigation through trial, and the benefit of recovery now versus potentially no recovery." (Id. at 32.)

Based on the above facts, Plaintiffs' arguments, and supporting declarations regarding the strengths and weaknesses of this action, it appears that while Plaintiffs have potentially meritorious claims, it is far from certain that they would have prevailed on those claims or achieved full recovery on them, particularly on a class-wide basis.  The settlement in this action provides the class members with significant relief now; and given the uncertainty of ultimate success at trial,

1   the proposed settlement provides the parties with a fair resolution of the issues presented which

2   weighs in favor of settlement.

3        The Court finds that consideration of the strength of Plaintiffs' case weighs in favor of

4   granting final approval of the settlement in this action.

5            2.        Risk, Expense, Complexity, and Likely Duration of Further Litigation

6        "[T]here is a strong judicial policy that favors settlements, particularly where complex class

7   action litigation is concerned."   In re Syncor ERISA Litig., 516 F.3d at 1101 (citing Class

8   Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)).   As a result, "[a]pproval of

9   settlement is preferable to lengthy and expensive litigation with uncertain results."   Johnson v.

10  Shaffer, No. 2:12-cv-1059-KJM-AC, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing

11  Morales v. Stevco, Inc., No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov.

12  10, 2011)).   Employment law class actions are, by their nature, time-consuming and expensive to

13  litigate.   Hightower v. JPMorgan Chase Bank, N.A., No. 11-cv-1802-PSG-PLA, 2015 WL

14  9664959, at *6 (C.D. Cal. Aug. 4, 2015).

15       Plaintiffs argue that this settlement avoids the risks, burdens and accompanying expense of

16  further litigation.   While the parties have engaged in significant investigation, discovery, and class-

17  wide data analysis, they have not conducted expert discovery or taken depositions.   Further

18  preparing for class certification and trial would remain as well as the prospect of appeals following

19  a disputed class certification ruling or any summary judgment ruling.   Plaintiffs contend that the if

20  this action were to continue, the parties would incur considerably more attorney's fees and costs

21  through trial.  (Mot. at 29.)

22       While this action is settling at a relatively early stage of the litigation, the Court considers

23  the risks associated with continued litigation, and the reality that due to the judicial emergency

24  within this district, any potential trial is this matter would be several years in the future.   The

25  settlement in this action will allow the class members to receive timely, guaranteed relief and will

26  avoid the risk of not receiving any recovery.  (Mot. at 28.)   If this action was to continue, the

27  parties' expenses would increase as litigation costs continue to accrue, and any recovery of a

28  monetary judgment, which is not guaranteed, would be prolonged.   As discussed in the following

1   subsection, the Court finds there are legitimate issues concerning maintaining class action status

2   throughout trial and the risk of decertification.

3       Accordingly, the Court finds consideration of the risk, expense, complexity, and likely

4   duration of further litigation, weighs in favor of granting final approval.

5           3.   <u>Risk of Maintaining Class Action Status Throughout Trial</u>

6       Plaintiffs emphasize that the issues here are fairly contested, and the assigned certification

7   probabilities far exceed the rate of contested motions in California over the past five years based

8   upon data available through the California Courts website.  (Mot. at 28.)  Plaintiffs also argue that

9   there is a risk that the individual differences between class members could pertain to liability, that

10  potential differences in the work experiences of class members assigned to different client

11  locations would make certification and proof of liability prohibitively unlikely, difficulty certifying

12  due to dispute resolution agreement executed by class members, and that class treatment could be

13  deemed improper as to some of the claims except for settlement purposes.  (Mot. at 19 n.7.)

14      Accordingly, the Court finds that consideration of the risk that class action status may not

15  be maintained through the trial of this action weighs in favor of granting final approval of the

16  settlement in this action.

17          4.   <u>Amount Offered in Settlement</u>

18      "It is well-settled law that a cash settlement amounting to only a fraction of the potential

19  recovery will not per se render the settlement inadequate or unfair," and "[i]t is the complete

20  package taken as a whole, rather than the individual component parts, that must be examined for

21  overall fairness."  <u>Officers for Justice</u>, 688 F.2d at 628; <u>In re Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d

22  454, 459 (9th Cir. 2000) (same); <u>Ontiveros v. Zamora</u>, 303 F.R.D. 356, 370 (E.D. Cal. 2014)

23  (same); <u>see also</u> <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 455 (2d Cir. 1974) ("In fact there

24  is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or

25  even a thousandth part of a single percent of the potential recovery."), <u>abrogated by</u> <u>Goldberger v.</u>

26  <u>Integrated Res., Inc.</u>, 209 F.3d 43 (2d Cir. 2000).  "To determine whether a settlement 'falls within

27  the range of possible approval' a court must focus on 'substantive fairness and adequacy,' and

28  'consider plaintiffs' expected recovery balanced against the value of the settlement offer.' "

1  Collins v. Cargill Meat Sols. Corp., 274 F.R.D. 294, 302 (E.D. Cal. 2011) (quoting In re Tableware

2  Antitrust Litig., 484 F.Supp.2d at 1080).

3      At preliminary certification, the Court found that the proposed recovery falls within the

4  range of possible approval and taken as a whole weighed in favor of finding the agreement fair,

5  reasonable, and adequate and incorporates such discussion herein.  (Order Granting Preliminary

6  Approval at 25-30.)   Here, as at preliminary approval, Plaintiffs' counsel proffers that the

7  maximum calculated reasonable exposure is $10,485,008.33, including PAGA penalties.  (Mot. at

8  26.)   Below, the Court addresses the amount of attorneys' fees and recommends reducing the

9  attorneys' fees from 33 1/3% to 25% of the common fund, thus increasing the settlement amount

10 that the class will receive, or that will ultimately revert to the *cy pres* charity.

11     Settlement class members will receive an average payment of $87.00 with the highest gross

12 payment being $872.56 and the lowest gross payment being $0.04.  (Rubalcava Decl. at ¶ 15.)  The

13 PAGA employees will receive an estimated average settlement payment of $6.62 with the highest

14 payment being $22.76 and the lowest payment being $0.30.  (Id. at ¶ 16.)

15     For all of the reasons discussed herein pertaining to the course of litigation, the risks of

16 continued litigation, the strengths and weaknesses of Plaintiffs' case, the fact that the settlement

17 was reached with the use of an experienced mediator in this field, as well as the supporting

18 declarations and analyses provided regarding damages valuations throughout settlement

19 negotiations provided to the Court, the Court finds the amount of the settlement weighs in favor of

20 final approval.  See Officers for Justice, 688 F.2d at 628; Ontiveros, 303 F.R.D. at 371 ("The court

21 finds no reason to doubt class counsel's assertion that a $3,680.19 average payout is a good result

22 in a wage and hour case involving blue collar workers . . . Additionally, class counsel's proposed

23 formula for apportioning the settlement to class members appears to be well-researched . . .

24 Although the court is ill equipped to conclude how the $3,680.19 average payout compares to

25 actual damages recoverable at trial, the overall terms of the settlement appear fair.").

26     "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and

27 expensive litigation that induce consensual settlements [and a] proposed settlement is not to be

28 judged against a hypothetical or speculative measure of what *might* have been achieved by the

negotiators." Linney, 151 F.3d at 1242 (quoting Officers for Justice, 688 F.2d at 625); see also Rodriguez, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . and have never prescribed a particular formula by which that outcome must be tested . . . In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value."); Thomas v. Cognizant Tech. Sols. U.S. Corp., No. SACV111123JSTANX, 2013 WL 12371622, at *6 (C.D. Cal. June 24, 2013) (granting final approval in wage and hour action where settlement encompassed between 4.4% and 5% of the maximum estimated liability figure).

Consistent with the reasons stated in the order granting preliminary approval, and the reasons discussed above, the Court finds that the settlement amount in this case is appropriate and fair.  Thus, consideration of this factor also weighs in favor of final approval.

### a.     PAGA Penalty Claims

The Court briefly and separately addresses the PAGA penalty claims.  As noted above, allocation of the penalties under PAGA are in the amount of $85,000., of which 75%, or $63,750., will be distributed to the LWDA, and the remaining 25%, or $21,250., will be included in the net settlement fund.  (Settlement Agreement at ¶¶ 11, 26(j).)

In the class action context, where PAGA claims are also often brought, a district court must independently determine that a proposed settlement agreement is "fundamentally fair, adequate and reasonable" before granting approval.  See Officers for Justice, 688 F.2d at 625; see also In re Heritage Bond Litigation, 546 F.3d 667, 674–75 (9th Cir. 2008).  The LWDA has provided some guidance regarding court approval of PAGA settlements.  See Gutilla v. Aerotek, Inc., No. 1:15-CV-00191 DAD BAM, 2017 WL 2729864, at *2 (E.D. Cal. Mar. 22, 2017) (discussing California Labor and Workforce Development Agency's Comments on Proposed PAGA Settlement ("LWDA Comments") (citing O'Connor v. Uber Techs., Inc., 201 F.Supp.3d 1110, 1133 (N.D. Cal. 2016)).

In O'Connor, where both class action and PAGA claims were covered by a proposed settlement, the LWDA stated that:

///

> It is [] important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, [it is important that] the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

Id.

The proposed $85,000. penalty payment in this case represents approximately 10.3% of the $825,000. gross settlement amount.  This amount falls above the range of previously approved comparable PAGA penalties in other class actions, in this court and others.  See Wise v. Ulta Salon, Cosmetics & Fragrance, Inc., No. 1:17-CV-00853 DAD EPG, 2020 WL 1492672, at *5 (E.D. Cal. Mar. 27, 2020) (approving $75,000 PAGA penalty, or approximately 2% of $3.4 million gross settlement); Garcia v. Gordon Trucking, Inc., No. 1:10-cv-0324-AWI-SKO, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving $10,000 PAGA penalty, or approximately 0.27% of 3.7 million gross settlement); Chu v. Wells Fargo Investments, LLC, No. C-05-4526-MHP, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving $10,000 PAGA penalty, or approximately 0.14% of $6.9 million gross settlement).

Having reviewed the parties' submission and the terms of the proposed settlement, the Court finds that the settlement amount related to Plaintiffs' PAGA claims is fair, reasonable, and adequate in light of the public policy goals of PAGA.  Because of the risks associated with the pursuit of further litigation in this action articulated above, the Court finds that the amount offered in settlement of the PAGA claims here weighs in favor of final approval of the settlement.

5.      Extent of Discovery Completed and Stage of the Proceedings

It is appropriate for the Court to consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. Millan, 310 F.R.D. at 613.  "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."[5]  Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d 964, 977 (E.D.

---

[5]  When the settlement takes place before formal class certification, as it has here, settlement approval requires a "higher standard of fairness." Lane, 696 F.3d at 819. This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Id. The Ninth Circuit has emphasized this requires courts to apply "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." Roes, 944 F.3d at 1043.

Cal. 2012) (quoting <u>DIRECTV, Inc.</u>, 221 F.R.D. at 528). "In the context of class action settlement, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." <u>Linney</u>, 151 F.3d at 1239 (quoting <u>In re Chicken Antitrust Litig.</u>, 669 F.2d 228, 241 (5th Cir. 1982)). Approval of a class action settlement thus "is proper as long as [formal or informal] discovery allowed the parties to form a clear view of the strength and weaknesses of their case." <u>Monterrubio v. Best Buy Stores, L.P.</u>, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

Here, the settlement was reached prior to class certification but after the production of discovery and attending mediation. At preliminary approval, the Court discussed and reviewed the extent of discovery, negotiations, mediation, and other information concerning the stage of proceedings prior to reaching settlement. (Order Granting Preliminary Approval at 23-25.) In the present motion, Plaintiffs again largely emphasize the same facts. (Mot. 13-14.)

The fact that the parties believe they engaged in sufficient discovery to evaluate the merits of the action weighs in favor of approving the class action settlement. Based on that discovery, the parties engaged in a private mediation with an experienced mediator, which aided in forming the settlement agreement now pending before the Court for final approval. The course of litigation leading to the mediation and the use of mediation to reach settlement weigh in favor of approving the settlement. <u>See</u> <u>Ontiveros</u>, 303 F.R.D. at 371 ("The parties use of mediation, which took place after significant discovery, and their reliance on the mediator's proposal in settling demonstrates the parties considered a neutral opinion in evaluating the strength of their arguments [and] [a]ccordingly, the parties' apparent careful investigation of the claims and their resolution in consideration of the views of a third party mediator weigh in favor of settlement."); <u>Millan</u>, 310 F.R.D. at 613 ("Participation in mediation prior to a settlement 'tends to support the conclusion that the settlement process was not collusive.' ") (quoting <u>Palacios v. Penny Newman Grain, Inc.</u>, 2015 WL 4078135 (E.D. Cal. July 6, 2015)) (quotation marks omitted).

Based on the facts reiterated above, the reasons discussed in the order granting preliminary approval, and the applicable legal standards, the Court finds the extent of discovery and the stage of proceedings weigh in favor of final approval of the settlement. These facts, particularly the

1   discovery provided in combination with the attendance of mediation and tenor of settlement

2   negotiations also indicate that the parties' negotiations constituted genuine and informed arm's

3   length bargaining, though the Court further scrutinizes whether aspects of the agreement indicate

4   any collusion below as required for pre-certification settlements.

5        Accordingly, the Court concludes that consideration of this factor also weighs in favor of

6   granting final approval.

7              6.    Experience and Views of Counsel

8        The Court is to accord great weight to the recommendation of counsel because they are

9   aware of the facts of the litigation and in a better position than the court to produce a settlement

10  that fairly reflects the parties' expected outcome in the litigation.  DIRECTV, 221 F.R.D. at 528.

11       Plaintiff Ramirez is represented the Moon Law Group, PC, while Plaintiff Holguin is

12  represented by Melmed Law Group P.C. and Bokhour Law Group, P.C.  The fees awarded in this

13  action will be distributed to the Moon Law Group P.C., Melmed Law Group P.C., and Bokhour

14  Law Group, P.C.  (Mot. at 30.)  As stated in the Settlement Agreement, class counsel consists of

15  all three firms.  (Settlement Agreement at ¶ 5.)  Plaintiffs' proffer all counsel have extensive

16  experience in employment class action law and complex wage-and-hour litigation.  The Court

17  previously found that Plaintiffs' counsel has sufficient experience handling class actions and

18  complex wage-and-hour litigation.  (Order Granting Preliminary Approval at 18-19.)  Counsel

19  opines that, while the settlement is a compromise figure reached between the parties, it is

20  substantial recovery when compared to the reasonably forecasted recovery for the class and when

21  considering the risks and uncertainties of continued litigation, the burden of proof necessary to

22  establish liability and the probability of appeal, the settlement amount is within the bounds of

23  reasonableness, and settlement is appropriate.  (Moon Decl. at ¶ 29.)  Counsel also asserts that the

24  settlement is fair, just, adequate and in the best interest of the class members.  (Melmed Decl. at ¶

25  13.)

26       Consideration of class counsel's experience and expressed opinions in this regard also

27  weighs in favor of final approval of the settlement.

28  ///

1    7.    Presence of a Governmental Participant

2    While there is no direct governmental party in this action, above, the Court discussed the

3  sufficiency of the PAGA portion of the settlement and payment of to the California LWDA.  The

4  settlement agreement provides that $85,000. of the gross settlement amount will go to the LWDA

5  for the payment of penalties under PAGA.  See Adoma, 913 F.Supp.2d at 977 ("Plaintiffs sought

6  to enforce claims under California's Private Attorney General Act of 2004 . . . on behalf of the

7  state and affected employees . . . settlement will result in a $50,000 payment to the California

8  Labor and Workforce Development Agency [and thus] [t]his factor weighs in favor of approval.");

9  Arredondo v. Sw. & Pac. Specialty Fin., Inc., No. 1:18-CV-01737 DAD SKO, 2022 WL 2052681,

10  at *11 (E.D. Cal. June 7, 2022) (payment of $100,000 of settlement to the LWDA under PAGA

11  weighs in favor of approval of settlement).

12    Accordingly, this factor weighs in favor of approval.

13    8.    Reaction of the Class Members

14    "It is established that the absence of a large number of objections to a proposed class action

15  settlement raises a strong presumption that the terms of a proposed class settlement action are

16  favorable to the class members."  DIRECTV, 221 F.R.D. at 529 (citations omitted).  As of the date

17  of the filing of the motion, the settlement administrator has not received any objections to the class

18  settlement; had received four requests for exclusion; and one dispute regarding work hours.

19  (Rubalcava Decl. at ¶¶ 11, 12, 13.)  No class members appeared at the final fairness hearing to

20  raise any objections to the settlement.

21    The absence of any objections is strong evidence that the settlement is fair, adequate and

22  reasonable.  DIRECTV, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed

23  Settlement provides further support for final approval of the Proposed Settlement."); Barcia v.

24  Contain-A-Way, Inc., No. 07-cv-938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009)

25  ("The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the

26  settlement.").

27    Accordingly, consideration of this factor weighs in favor of granting final approval.

28    In sum, after considering all of the above eight factors, the court finds on balance that the

1  settlement is fair, reasonable, and adequate.  See Fed. R. Civ. P. 23(e); Staton, 327 F.3d at 953;

2  Hanlon, 150 F.3d at 1026.  The Court now turns to determine to what extent any of the "more

3  subtle signs" of collusion recognized by the Ninth Circuit are present here.

4          9.      Signs of Collusion

5          Where a class action is settled prior to class certification, the Court must also consider

6  whether there is evidence of collusion or other conflicts of interest before approving the settlement.

7  In re Bluetooth, 654 F.3d at 946.  The Ninth Circuit has provided examples of signs that a

8  settlement is the product of collusion between the parties, such as "(1) when counsel receive a

9  disproportionate distribution of the settlement, or when the class receives no monetary distribution

10  but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement

11  providing for the payment of attorneys' fees separate and apart from class funds . . .; and (3) when

12  the parties arrange for fees not awarded to revert to defendants rather than be added to the class

13  fund."  Id. at 947.

14          The Court's order granting preliminary approval considered signs of collusion and is

15  incorporated herein.  (Order Granting Preliminary Approval at 38-41.)  The order also identified

16  several problematic aspects of the settlement, including: the amount of attorneys' fees sought; the

17  presence of a smooth sailing agreement; the incentive payments; as well as the reduction of

18  valuation, already addressed above.  (Id. at 27-32, 40-5.)  The parties have previously addressed

19  other issues that the Court found problematic, such as changing the *cy pres* beneficiary and the pro

20  rata share to each employee from weeks worked to hours worked, and removing the Fair Labor

21  Standards Act ("FLSA") release.

22          The Ninth Circuit has held that courts must apply "heightened scrutiny to post-class

23  certification settlements in assessing whether the division of funds between the class members and

24  their counsel is fair and 'adequate.' "  Briseno v. Henderson, 998 F.3d 1014, 1025 (9th Cir. 2021)

25  (quoting Fed. R. Civ. P. 23(e)(2)(C)).  Accordingly, the Court first considers whether counsel is

26  seeking a disproportionate distribution for attorney fees.

27          The motion for attorney fees here seeks 33 1/3%, or $275,000.  (Settlement Agreement at ¶

28  26(m).)  The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3

percent of the total settlement value, with 25 percent considered a benchmark percentage.  Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 448 (E.D. Cal. 2013); In re Activision Sec. Litig., 723 F.Supp. 1373, 1377 (N.D. Cal. 1989) ("this court finds that in most recent cases the benchmark is closer to 30%").  Because the award sought falls within the acceptable range for the Circuit, the settlement agreement does not provide a disproportionate distribution to class counsel.  See Millan, 310 F.R.D. at 612 (attorney fee of 33 1/3% of settlement fund, although significantly above the benchmark for the Circuit, is not unreasonable).  The amount of attorney fees sought, although above the benchmark for the Ninth Circuit, would not provide a disproportionate distribution to class counsel.

Although the settlement agreement does contain a clear sailing agreement, it does not contain a reversion clause that allows for funds to revert back to Defendant.

In sum, after considering the foregoing factors, the Court finds that the settlement is fair, adequate, and reasonable pursuant to Rule 23(e).  Further, the Court finds no evidence that the settlement is the result of any collusion between the parties.  In re Bluetooth, 654 F.3d at 946–47.  The Court now turns to consideration of the concurrently filed motion for attorneys' fees, costs, and incentive awards.

### C.  Motion for Attorneys' Fees, Expenses, and Incentive Payments

In the motion for final approval of the class action settlement, Plaintiffs also request attorneys' fees, litigation expenses, and incentive payment awards for the named Plaintiffs.

#### 1.  Attorneys' Fees

Plaintiffs are requesting total attorneys' fees in the amount of $275,000. which represents 33 1/3% of the gross settlement amount.  This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  In re Bluetooth, 654 F.3d 935, 941 (9th Cir. 2011).  This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial."  In re Mercury Interactive Corp. Secs. Litig., 618 F.3d 988, 994 (9th Cir. 2010); In re Wash. Pub. Power Supply Sys. Secs. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994).  As such, the district court assumes a fiduciary role for the class members in evaluating a

request for an award of attorneys' fees from the common fund.  In re Mercury, 618 F.3d at 994; see also Rodriguez v. Disner, 688 F.3d 645, 655 (9th Cir. 2012); Rodriguez, 563 F.3d at 968.

Since this is a diversity action, federal courts apply state law to determine the right to fees and to the method of calculating them.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002); Mangold v. Cal. Public Utils. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995). "California law permits fee shifting in favor of the prevailing party on certain statutory causes of action (e.g., Gov. Code, §§ 12965, subd. (b), 12974, 12989.2), when a plaintiff has acted as a private attorney general by enforcing an important right affecting the public interest (Code Civ. Proc., § 1021.5)[.]"  Laffitte v. Robert Half Int'l Inc., 1 Cal.5th 480, 489 (2016).

The California Supreme Court has recently clarified that, under California law, calculating attorney fees by a percentage-of-fund method remains appropriate.  Laffitte, 1 Cal.5th at 503–06. It is within the discretion of the court to calculate the fee as a percentage and then check the reasonableness of the fee with a lodestar calculation.  Id., at 489.  "If a comparison between the percentage and lodestar calculations produces an imputed multiplier far outside the normal range, indicating that the percentage fee will reward counsel for their services at an extraordinary rate even accounting for the factors customarily used to enhance a lodestar fee, the trial court will have reason to reexamine its choice of a percentage."  Id., at 504.  Therefore, under California law, a court "may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created."  Id., at 503.

While the California Supreme Court recognized the Ninth Circuit's twenty-five benchmark for percentage awards in common fund cases, no such benchmark has been adopted under California law.  Laffitte, 1 Cal. 5th at 495, 503–06 (affirming an attorneys' fee recovery for a wage-and-hour class action of one-third of a $19 million settlement fund and a lodestar cross-check that used a multiplier of between 2.03 and 2.13).  In Laffitte, the California Supreme Court also suggested that considerations of the risks and potential value of the litigation, the contingency, novelty, and difficulty of the litigation, the skill shown by counsel, and a lodestar cross-check are all appropriate means of discerning an appropriate percentage award in a common fund case.  Id., at 504.

In awarding a percentage of attorney fees from a common fund, the Ninth Circuit has similarly provided a non-exhaustive list of factors to be considered in assessing the reasonableness of the award, including: "the extent to which class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." In re Online DVD-Rental Antitrust Litig., 779 F.3d at 954–55. The Ninth Circuit has also approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. Vizcaino, 290 F.3d at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted.").

As is the case here, where the lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.' " Bond v. Ferguson Enters., Inc., No. 1:09-cv-01662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting Fernandez v. Victoria Secret Stores, LLC, No. 2:06-cv-04149-MMM-SH, 2008 WL 8150856 (C.D. Cal. July 21, 2008)). Moreover, beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, an adjustment to decrease or a lodestar multiplier may be applied. Bond, 2011 WL 2648879, at *13.

### a.    Previous Order from the Court at Preliminary Approval

At preliminary approval the Court advised, "The requested attorneys' fee in the amount of 33 1/3% is not per se excessive, and importantly, the Court forewarns Plaintiffs that it is not likely to approve an amount over the Ninth Circuit's benchmark of twenty-five percent (25%) absent a showing that counsel achieved extraordinary results or otherwise prove they are entitled to such an amount." (Order Granting Preliminary Approval at 40.)  At final approval, Plaintiffs are requesting 33 1/3% of the settlement fund citing In re Activision Securities Litigation, 723 F. Supp.at 1375, in which the court found that several cases have expressed frustration with the

1  lodestar approach in deciding fee awards.  However, as discussed above, the California Supreme

2  Court has held it is within the discretion of the court to calculate the fee as a percentage and then

3  check the reasonableness of the fee with a lodestar calculation.  Laffitte, 1 Cal. 5th at 489.

4      **b.      Percentage of the Fund Review**

5      Counsel seeks an award of attorneys' fees equal to 33 1/3% of the common fund arguing

6  numerous factors support this requested award.  (Mot. at 30-37.)  Plaintiffs argue that the fee of 33

7  1/3% of the gross settlement fund is in line with guidelines established under California case law

8  and in academic literature and is consistent with awards in California.  (Id. at 32.)  Plaintiffs also

9  argue federal district courts in California tend to award above the 25% benchmark.  However, as

10  Plaintiffs recognize in the Ninth Circuit, 25% of the settlement amount is the "benchmark" for

11  attorneys' fees awarded under the percentage method.  (Id. at 33.)

12      While the Court finds that this action is a fairly typical wage and hour action, it

13  acknowledges the case was based on contingency, the risks of litigating with no attorney fees

14  being awarded, and the efforts expended by counsel over the time that this action has been

15  proceeding.  Counsel argue they have achieved a very strong result for the class.  (Mot. at 34-35.)

16  This Court has voiced its concerns regarding whether the settlement amount is sufficient given the

17  initial valuations.  On the other hand, given the nature of this action, the extent of investigation and

18  discovery completed, the completion of mediation, and the negotiations that occurred, it appears

19  counsel ultimately did achieve a good settlement for the class.

20      However, the amount of settlement, contingent nature, risk, and nature of the litigation are

21  not enough in this case to justify an upward departure from 25% in this action.  The Court accepts

22  that counsel are seasoned and experienced litigators of wage-and-hour class actions, and provided

23  declarations attesting to their years of experience with complex and class action litigation,

24  recovery of millions of dollars on behalf of thousands of individual class members in California,

25  and have detailed the wage-and-hour class action cases in which they have been involved.  The

26  Court finds the experience of counsel in litigating complex wage and hour class actions weighs in

27  favor of the benchmark of 25% in relation to obtaining results for the class in this litigation.

28  ///

In sum, the Court does not find the results for the class to be exceptional, but rather reasonable. Vizcaino, 290 F.3d at 1048–50. The Court does not find the litigation to be extremely risky, but rather somewhat normal and routine for this area of the law, and the contingency nature is also routine for this type of case and does not justify an upward departure in relation to the risk. Here, based on consideration of "all of the circumstances of the case," the Court finds it appropriate to award attorneys' fees at the benchmark of 25%.

### c.   Lodestar Cross-Check of Reasonableness

The Court considers the lodestar as a cross-check of the reasonableness of the attorney fees. When applying the percentage of the common fund method in calculating attorney fees, courts use the "lodestar" method as a crosscheck to determine the reasonableness of the fee request. See Vizcaino, 290 F.3d at 1050; Laffitte, 1 Cal.5th at 489. "This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.' " Adoma, 913 F.Supp.2d at 981 (quoting In re Bluetooth, 654 F.3d at 942). As stated above, where a lodestar is used as a cross-check, the court "may use a 'rough calculation of the lodestar.' " Bond, 2011 WL 2648879, at *12.

The billing records provided reveal the following hours billed by seven lawyers.

| Name | Hours billed | Hourly rate | Total |
|------|------|------|------|
| Kane Moon | 29 | $900 | $26,100.00 |
| Allen Feghali | 26.3 | $850 | $22,355.00 |
| Lilit Tunyan | 78.4 | $650 | $50,960.00 |
| Charlotte Mikat-Stevens | 51.2 | $575[6] | $29,440.00 |
| Jonathan Melmed | 18.5 | $777 | $14,375.50 |
| Mehrdad Bokhour | 13.5 | $650 | $8,775.00 |
| | | Total | $152,004.50 |

---

[6] The first entry dated April 24, 2023, billed .2 hours at $375. per hour. All remaining entries are billed at $575. per hour. (ECF No. 55-6 at 9.) However, the motion argues that the amount of fees expended is $152,004.50. To get this amount Ms. Mikat-Stevens charged time would be billed at $575. per hour. The Court finds that the entry for April 24, 2023 was to be billed at $575. per hour, nor $375. per hour.

1    The hourly fees used to calculate attorney fees must be reduced from the stated hourly rate

2    to reflect the market rate within this community.  The Supreme Court explained that attorney fees

3    are to be calculated with "the prevailing market rates in the relevant community."  Blum v.

4    Stenson, 465 U.S. 886, 895–96, n.11 (1984).  In general, the "relevant community" for purposes of

5    determining the prevailing market rate is the "forum in which the district court sits."  Camacho v.

6    Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008).  Thus, when a case is filed in the Fresno

7    Division of the Eastern District of California, "[t]he Eastern District of California, Fresno

8    Division, is the appropriate forum to establish the lodestar hourly rate. . .."  See Jadwin v. Cnty. of

9    Kern, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011).

10    Overall, the requested rates are higher than those previously accepted by this Court as

11    reasonable.  See e.g., Emmons v. Quest Diagnostics Clinical Labs., Inc., No. 1:13-cv-00474-DAD-

12    BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017) (adopting as reasonable rates between

13    $370 and $495 for associates and $545 and $695 for senior counsel and partners); Englert v. City

14    of Merced, No. 1:18-CV-01239 NONE SAB, 2020 WL 2215749, at *13 (E.D. Cal. May 7, 2020)

15    (approving attorneys' fees in an FLSA action that totaled approximately thirty-one percent (31%)

16    of the common fund, and in performing a lodestar cross-check, finding the corresponding rates of

17    $450.00 per hour for a partner with nineteen years of experience, $400.00 per hour for a senior

18    associate attorney with an unspecified amount of years of experience, and a rate of $325.00 per

19    hour for an associate with eight years of experience, to be reasonable.); Urena v. Central California

20    Almond Growers Assn., No. 1;18-CV-00517 NONE EPG, 2021 WL 2588266, at *12 (E.D. Cal.

21    June 24, 2021), report and recommendation adopted in part sub nom. Urena v. Cent. California

22    Almond Growers Assn., No. 1:18-CV-00517 NONE EPG, 2021 WL 4318258, at *12-3 (E.D. Cal.

23    Sept. 23, 2021) (recognizing $525. per hour for attorney with twenty-five years of experience is

24    near the top of the market for hourly rates in this district and attorneys with four years of

25    experience are awarded $300. per hour); Connelly v. Starbucks Corp., No. 1:21-CV-00746-SAB,

26    2023 WL 6387077, at *17 (E.D. Cal. Sept. 29, 2023) (reasonable rate for attorney with fifteen

27    years of experience is $400 per hour); Gonzalez v. NCI Grp., Inc., No. 1:18-CV-00948 AWI SKO,

28    2023 WL 373252, at *8 (E.D. Cal. Jan. 24, 2023) (allowing rate of $400 per hour for attorney with

1   18 years of experience and $350 per hour for attorney with eight years of experience).  The Court

2   considers the reasonable hourly rate for the attorneys that participated in this action.

3        Kane Moon received his Juris Doctorate ("J.D.") from Loyola Marymount Law School in

4   2006 and has been an active member of the State Bar since 2007.  He has been selected to Super

5   Lawyers each year from 2019 to 2023.   (Moon Decl. at ¶ 39.)  He co-founded the Moon & Yang

6   APC, which is now the Moon Law Group, PC in March 2010.  His practices focuses exclusively

7   on representing employees in wage and hour litigation.  (Id. at ¶ 40.)  He has prosecuted numerous

8   wage and hour class action lawsuit that have received preliminary and final approval.  (Id. at ¶ 42.)

9   Based on his experience, a reasonable rate for Mr. Moon would be $550. per hour.

10       Allen Feghali is a partner at Moon Law Group, PC.  He received his J.D. from La Verne

11  College of Law in 2014 and has been an active member of the State bar since 2014.  He was

12  selected by Super Lawyers as a "Southern California Rising Star" in 2020-2023.  (Moon Decl. at ¶

13  43.)  He began working for Moon Law Group, PC in May 2015 and has focused his practice on

14  advocating for employees at the trial-court and appellate level.  Prior to June 2018 his practice

15  focused primarily on individual Fair Employment and Housing Act ("FEHA") and wrongful

16  termination claims, as well as individual wage and hour claims.  Since June 2018, he became

17  heavily involved in the firm's class and PAGA representative action practice.  (Id. at ¶ 44.)  Based

18  on his experience, a reasonable rate for Mr. Feghali would be $400. per hour.

19       Lilit Tunyan was an associate at Moon Law Group, PC until recently.  Since she was

20  admitted to the State Bar, her practice has focused mainly on labor and employment class action

21  lawsuits.[7]   (Moon Decl. at ¶ 47.)  She received her J.D. from State Yerevan University and

22  previously worked as an attorney for approximately twenty years in Armenia before being

23  accepted to the State Bar in January 2020.  (Id. at ¶ 48.)  Although she has practiced in Armenia

24  for approximately twenty years, the declaration does not indicate in what area she practiced.

25  Based on her experience, the Court finds a reasonable rate would be $400. per hour.

26

27  _____
    [7] The Court takes judicial notice of the State Bar of California website indicating that Lilit Tunyan was admitted in
28  January 2020.  Located at https://apps.calbar.ca.gov/attorney/LicenseeSearch, search Lilit Tunyan (last visited May 28, 2024).

Charlotte Mikat-Stevens is an associate at Moon Law Group, PC advocating for employees in employment and related litigation.  Her practice is focused on wage and hour class actions and PAGA representative actions.  (Moon Decl. at ¶ 50.)  She received her J.D. from Vermont Law School and after graduating she was selected for a fellowship focused on labor trafficking and forced labor of agricultural workers in the United States.  Before joining Moon Law Group PC, she represented farm workers with various employment law claims, including class and representative actions.  (Id. at ¶ 51.)  She became an active member of the State Bar in 2019.  (Id. at ¶ 52.)  Based on her experience, a reasonable rate would be $300.00 per hour.

Jonathan Melmed received his J.D. from Loyola Law School in 2012 and has been a member of the State Bar since 2013.  (Melmed Decl. at ¶ 5.)  He litigated complex commercial matters, representing life and health insurers, and assisted in the representation of hotels, restaurants, and real estate development groups in commercial litigation, including class actions.  (Id. at ¶ 6.)  In February 2015, he became the founding and managing shareholder in Melmed Law Group P.C. representing employees in wage and hour class actions and other employment matters.  (Id. at ¶ 7.)  Based on his experience, a reasonable rate would be $400. per hour.

Mehrdad Bokhour is the principal of Bokhour Law Group, P.C.  (Bokhour Decl. at ¶ 1.) He received his J.D. from Loyola Law School and has been a member of the State Bar since 2012. (Id. at ¶¶ 6, 7.)  He has litigated class action and PAGA representative actions.  (Id. at ¶ 6.)  After practicing in the area of disability discrimination and harassment matters under FEHA, he opened his law firm in 2014 with an exclusive concentration in representation of employees against employers to recover unpaid wages and vindicate harassment, discrimination, and retaliation claims.  (Id. at ¶ 7.)  The majority of his cases have been litigated as class actions.  (Id. at ¶ 8.)  He was selected as a Super Lawyer in 2023-24.  (Id. at ¶ 11.)  Based on his experience a reasonable rate would be $400. per hour.

///

///

///

///

The adjusted rates for the billing records are as follows:

| Name | Hours | Rate | Total |
|------|-------|------|-------|
| Kane Moon | 29 | $550 | $15,950.00 |
| Allen Feghali | 26.3 | $400 | $10,520.00 |
| Lilit Tunyan | 78.4 | $400 | $31,360.00 |
| Charlotte Mikat-Stevens | 51.2 | $300 | $15,360.00 |
| Jonathan Melmed | 18.5 | $400 | $7,400.00 |
| Mehrdad Bokhour | 13.5 | $400 | $5,400.00 |
| | | Total | $85,990.00 |

Here, Plaintiff is requesting fees in the amount of $275,000. based on the request for 33 1/3% of the gross settlement fund.  Consideration of the results achieved for the class, the skill shown by counsel, the time and labor involved in the litigation, that counsel was precluded from other work, the complexity of the litigation, the novelty and difficulty of the litigation, and the risks and potential value of the litigation justifies applying a 2.4 modifier which brings the award to 25% of the gross settlement funds.  The Court finds that an award of attorney fees of 25% ($206,250.) is fair and reasonable and adequately compensates counsel for the time expended in this matter.

The parties seek for fees to be awarded in the following manner: 80% to the Moon Law Group, PC; 10% to Bohkour Law Group P.C.; and 10% to Melmed Law Group.  Accordingly, the Court shall order the $206,250. in attorney fees awarded as follows: $165,000. to the Moon Law Group, PC; $20,625. to Bohkour Law Group P.C.; and $20,625. to Melmed Law Group.

2.      Expenses of Class Counsel

Additionally, class counsel seeks to recover the costs expended on this litigation.  Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary."  In re Immune Response Secs. Litig., 497 F.Supp.2d at 1177.

1      Plaintiffs seek to recover expenses in the amount of $19,559.46.[8]    (Moon Decl. at ¶ 66;

2  Suppl. Decl. of Kane Moon ("Suppl. Moon Decl.") at 3, ECF No. 58.)

3      Plaintiffs seek the following expenses:

4          Consultant - data analysis                      $2,900.00

5          Court fees                                       $2,977.96

6          Mediation                                       $12,500.00

7          Service fees                                       $281.50

8          LWDA filing fee                                    $150.00

9          Administrative fee[9]                              $750.00

10      The Court finds that the expenses sought were reasonable and necessary to the litigation of

11  this action.  Accordingly, Plaintiffs are awarded costs in the amount of $19,559.46.

12      3.    Class Representative Incentive Awards

13      "Incentive awards are fairly typical in class action cases."  Rodriguez, 563 F.3d at 958–59.

14  However, the decision to approve such an award is a matter within the court's discretion.  In re

15  Mego Fin. Corp. Sec. Litig., 213 F.3d at 463.  Generally speaking, incentive awards are meant to

16  "compensate class representatives for work done on behalf of the class, to make up for financial or

17  reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness

18  to act as a private attorney general."  Rodriguez, 563 F.3d at 958–59.  The Ninth Circuit has

19  emphasized that "district courts must be vigilant in scrutinizing all incentive awards to determine

20  whether they destroy the adequacy of the class representatives . . ..  [C]oncerns over potential

21  conflicts may be especially pressing where . . . the proposed service fees greatly exceed the

22  payments to absent class members."  Radcliffe v. Experian Info. Sols., Inc., 715 F.3d 1157, 1165

23  (9th Cir. 2013) (internal quotation marks and citation omitted).  A class representative must justify

24  an incentive award through "evidence demonstrating the quality of plaintiff's representative

25

26  [8] The supplemental declaration filed on May 29, 2024, corrected the amount of expenses sought in this action.  (Suppl. Moon Decl. at ¶¶ 2 n.1, 4.)

27  [9] The administrative fee is a general one-time expense to cover costs of paralegal, legal assistant and law clerk services, photocopying, printing, postage and mailing, office internet, telephone service, and case database initiation fee.  (Suppl.

28  Moon Decl. at ¶ 3.)

1  service," such as "substantial efforts taken as class representative to justify the discrepancy

2  between [her] award and those of the unnamed plaintiffs." Alberto v. GMRI, Inc., 252 F.R.D. 652,

3  669 (E.D. Cal. 2008).

4      In assessing the appropriateness of class representative enhancements or incentive

5  payments, the Court must consider factors such as the actions the plaintiffs took to protect the

6  interests of the class, the degree to which the class has benefitted, the amount of time and effort the

7  plaintiff expended in pursuing litigation, and any notoriety or personal difficulties encountered by

8  the representative plaintiff.  Khanna v. Intercon Sec. Systems, Inc., No. 2:09-cv-2214 KJM EFB,

9  2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014); Reibstein v. Rite Aid Corp., 761 F. Supp. 2d

10 241, 257 (E.D. Penn. 2011); see also Staton, 327 F.3d at 975-77.  "Incentive awards are

11 particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant

12 'reputational risk' by bringing suit against their former employers." Bellinghausen, 306 F.R.D. at

13 267 (citation omitted).

14     In the order granting preliminary approval, the Court considered the range of recovery in

15 this action for class members versus the incentive awards and given the significant valuation

16 discounts that were given to the claims, the inference was at least raised that the named class

17 members could be settling this matter for their benefit at the expense of the unnamed class

18 members.  (Order Granting Preliminary Approval at 42-55.)  The parties were forewarned that the

19 awards would be reduced if not substantially justified by declarations demonstrating the hours

20 expended at final approval.  (Id. at 55.)  It does not appear Plaintiffs heeded the Court's specific

21 forewarning and they have not provided declarations that sufficiently support the request for the

22 award requested.

23     Here, the class representatives Ramirez and Holguin are seeking service awards of

24 $7,500.00, in addition to the class awards they will be receiving as members of the class.  These

25 amounts are to be awarded from the gross settlement amount prior to division amongst the class

26 and PAGA members.

27     The Court notes that at the time of the filing of the motion, the average gross estimated

28 award to a class member is $87.00. and the average PAGA payment is $6.62.  (Rubalcava Decl. at

48

¶¶ 15, 16.)  Therefore, the settlement provides an average net payment of $93.62 per class and PAGA member.  As the requested service awards of $7,500 are approximately 80 times the size of the average net payment,[10] it constitutes a large differential with respect to the amounts to be awarded to the named Plaintiffs versus the unnamed class members.  The proportionality between these payments, alone, suggests the requested award amount is excessive.  In addition, however, the Court does not find that the record supports an award at the Ninth Circuit average of $5,000.00.  Even despite the Court's forewarning and clearly established legal authorities that a motion for final approval is more carefully scrutinized than is the preliminary approval request, see, e.g., True, 749 F. Supp. 2d at 1063, Plaintiffs did not submit further sufficient declarations to support the requested incentive award payment amount.  Instead, as with many of the arguments asserted in the motion for final approval, Plaintiff appears to rely largely upon prior arguments and statements asserted in support of the motion for preliminary approval.  However, the Court finds this is insufficient at the final approval stage, particularly in light of the forewarnings by the Court.

Plaintiffs Ramirez and Holguin both assert that they reviewed and conferred with their attorneys regarding the Settlement Agreement in this case.  (Decl. of Plaintiff Holguin ("Holguin Decl.") at ¶ 22, ECF No. 55-8; Decl. of Pl. Ramirez ("Ramirez Decl.") at ¶ 21, ECF 55-14.)  They initiated and helped prosecute this action and took substantial risk by agreeing to become a named plaintiff, including the negative impact the case may have on their future employability.  They signed a general release of any and all claims that they have against Defendant.  (Holguin Decl. at 23; Ramirez Decl. at ¶ 23.)  They initiated this action by bringing certain issues to their attorney's attention and provided a factual background that was used to prosecute the action.  They reviewed documents they had in her possession with the attorneys.  They provided firsthand knowledge as to Defendant's business operations and assisted in identifying potential witnesses.  (Holguin Decl. at 24; Ramirez Decl. at 24.)  They continued to search for potential witnesses and documents after the lawsuit was filed.  They assisted their attorneys with preparation for the litigation and were

---

[10] The Court acknowledges that, in light of its proposed reduction in attorneys' fees, this average net payment amount should increase, to some extent.  Nonetheless, even under such circumstances, the Court finds the remaining difference between the service award and average net award, in combination with the absence of supporting information expressly requested by the Court, does not justify an incentive payment that exceeds the presumptively reasonable amount by $2,500. as discussed herein.

1  prepared to make themselves available for deposition.  They made themselves available for the full

2  day of arbitration and reviewed the terms of the settlement agreement before signing.  They

3  regularly checked in with their attorneys regarding the settlement administration and class notice

4  process.  (Holguin Decl. at 25; Ramirez Decl. at 25.)  They devoted a substantial amount of time,

5  both before the lawsuit was filed and during litigation to ensure a fair result for the class.  (Holguin

6  Decl. at 27; Ramirez Decl. at 27.)

7       Notably, while the plaintiffs both assert that they spent a substantial amount of time

8  litigating this lawsuit, there is no information alleged to support the statements or by which the

9  Court can determine the amount of time the plaintiffs actually devoted to this action.  Looking at

10  the declarations themselves, Plaintiffs met with their attorney at the beginning of the litigation,

11  provided documents which they reviewed with counsel, made themselves available for the day of

12  mediation, reviewed the settlement agreement before signing, and regularly checked in with their

13  attorneys.  This is insufficient to justify an award that is 80 times the size of the award that will be

14  received by the average class member.

15       The Court does recognize the efforts of the plaintiffs that were involved in litigating this

16  action, and the risk that was assumed by prosecuting an action against their former employer.

17  However, this matter settled less than two years after it was filed, and the time expended by the

18  Plaintiffs was not extensive.  Accordingly, the Court shall award an incentive payment of $4,000.

19  to each of the class representatives.

20       4.    Settlement Administrator Costs

21       The court previously approved the appointment of ILYM Group Inc. as the settlement

22  administrator.  The total costs incurred and to be incurred by ILYM Group, Inc. for the notice and

23  settlement administration process is $30,000.  (Mot. at 39; Rubalcava Decl. ¶ 17; ILYM Group,

24  Inc. Invoice, ECF No. 55-5.)

25       Duties performed to-date and to be performed after Final Approval of the Settlement is

26  granted by ILYM Group, Inc., include: (a) printing and mailing the Notice of Proposed Class and

27  PAGA Representative Action Settlement, in both English and Spanish; (b) receiving and

28  processing Requests for Exclusion from, and any objections to, the Settlement; (c) resolving any

Class Member disputes over the number of hours Defendant has record of them working during the Class and/or PAGA Period, which was pre-printed on their individualized Notice Packet; (d) calculating individual Settlement Class and/or PAGA Payment amounts; (e) processing and mailing settlement award checks; (f) handling tax withholdings as required by the Settlement and the law; (g) preparing, issuing, and filing tax returns and other applicable tax forms; (h) handling the distribution of any unclaimed funds pursuant to the terms of the Settlement; (i) posting a copy of the final Judgment on a website maintained by ILYM Group for a period of no less than 90 calendar days after entry; and (j) performing other tasks as the Parties mutually agree to and/or the Court orders ILYM Group to perform.  (Mot. 55; Rubalcava Decl. at ¶ 3.)

The Court finds these administration costs reasonable and appoints ILYM Group as settlement administrator and grants the settlement administration costs.

## V.

## ORDER

Based on the foregoing, the Court finds the settlement is fundamentally fair, adequate, and reasonable.  Fed. R. Civ. P. 23(e); Lane, 696 at 818; Hanlon, 150 F.3d at 1026–27.

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiffs' motion for final approval of the class action settlement (ECF No. 55), is GRANTED and the settlement is approved as fair, reasonable, and adequate;

2.    The class is certified for purposes of settlement and the class is defined as "All non-exempt employees of Defendant who worked for Defendant in California from March 8, 2018 through June 20, 2023.  Excluded from the class are those class members who submitted a timely request for exclusion from the settlement to the settlement administrator;

3.    Plaintiffs Ramirez and Holguin are appointed as class representatives for the purpose of the settlement and are each awarded an incentive payment of $4,000.;

4.    The Court confirms the appointment Moon Law Group, PC, Bohkour Law Group, P.C., and Melmed Law Group P.C., as class counsel, for settlement purposes only;

5.    Plaintiffs' request for attorneys' fees is GRANTED IN PART, and attorney fees in

the amount of $206,250. are awarded as follows: $165,000. to the Moon Law Group, PC; $20,625. to Bohkour Law Group P.C.; and $20,625. to Melmed Law Group;

6. Litigation costs in the amount of $19,559.46 are awarded, payable as follows: $17,880.63 to Moon Law Group, PC, and $1,678.83 to Bohkour Law Group, P.C.;

7. ILYM Group, Inc. is appointed as settlement administrator.  ILYM Group, Inc. shall fully effectuate the settlement agreement and shall receive payment of $30,000. for settlement administration services;

8. Defendant shall fully fund the gross settlement amount ($825,000.00), and also the amounts necessary for Defendant's employer payroll taxes owed on the wage portion of the Settlement Class Payments, by transmitting the funds to the Settlement Administrator no later than **fourteen (14) calendar days** from the Effective Date of the Settlement;

9. Legal Aid at Work is confirmed as the *cy pres* beneficiary of any uncashed settlement or PAGA payments;

10. Plaintiffs shall file a final report on distribution no later than **245 days** from the date of entry of this order;

11. The Court shall retain jurisdiction to consider all further applications arising out of or in connection with the Settlement for **365 days** from the date of entry of this order; and

12. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiffs Ramirez and Holguin and against Defendant Merrill Gardens, LLC. and to close this action.

IT IS SO ORDERED.

Dated:   **June 10, 2024**

UNITED STATES MAGISTRATE JUDGE